Jose Alberto BARRIOCANAL, Individually and as the Executor of the Estate of Emiliana F. Barriocanal, Jose L. Barriocanal, Nelson Ramon Barriocanal, and Maria Veronica Barriocanal, Plaintiffs Below, Appellants,

v.

Martin GIBBS, M.D., Defendant Below, Appellee.

No. 334, 1996.

Supreme Court of Delaware.

Submitted: April 22, 1997.
Decided: July 9, 1997.
As Revised on Denial of Rehearing Sept. 9, 1997.

Ben T. Castle, and Melanie K. Sharp, of Young, Conaway, Stargatt & Taylor, Wilmington, and Christopher C. Fallon, Jr., (argued), of Cozen and O'Connor, Philadelphia, PA, of Counsel, for Appellants.

Richard Galperin (argued), and Mary L. Sutherland, of Morris, James, Hitchens & Williams, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal of a judgment for the defendant doctor in a medical malpractice case, we consider the requirements for the admissibility of testimony under Delaware's informed consent statute, 18 *Del.C.* § 6852. The statute defines the conditions under which an injured party may recover damages from a health care provider based upon lack of informed consent. We conclude that the Superior Court improperly excluded plaintiffs' proffered testimony that the defendant failed to meet the standard of care for informed consent. Accordingly, we reverse in part the judgment below and remand for a new trial of plaintiffs' informed consent claim. We need not decide the second issue raised by plaintiffs on appeal concerning plaintiffs' contention that certain remarks made by defense counsel in closing were prejudicial and that the trial court committed reversible error in permitting them. Nevertheless, such remarks and their implications were improper and should not be repeated at the new trial.

### Facts and Procedural History

Plaintiffs below-appellants, the husband and children of Emiliana F. Barriocanal, filed this wrongful death and survival action against defendant below-appellee, Martin Gibbs, M.D., under Delaware's Health Care Malpractice Insurance and Litigation Act, 18 *Del.C.* § 6801 *et seq.* Dr. Gibbs performed brain aneurysm surgery on Mrs. Barriocanal on April 19, 1992. During the surgery, Dr. Gibbs clipped Mrs. Barriocanal's right distal internal carotid artery instead of the aneurysm. She suffered massive cerebral injury and died several days later.

The Barriocanals brought suit, alleging that Dr. Gibbs had failed to obtain informed consent for the surgery and that he had performed the surgery in a negligent manner. At trial, the Barriocanals sought to introduce evidence that Dr. Gibbs had failed to disclose that he had not performed aneurysm surgery recently, that Christiana Hospital would be thinly staffed the day of surgery since it was Easter Sunday, and that there were other hospitals in nearby cities that specialized in this type of surgery.

Prior to trial, defense counsel filed a motion in limine to exclude this evidence because plaintiffs' expert, Jeffrey S. Yablon, M.D., had not unequivocally stated that this type of information is customarily given to patients in order to secure their informed consent. The Superior Court granted the motion on the ground that the plaintiffs could not point to a portion of the pretrial record that complied with the standards in 18 *Del.C.* § 6852(a)(2), which provides:

(a) No recovery of damages based upon lack of informed consent shall be allowed in any action for malpractice unless: ...

(2) The injured party proved by a preponderance of evidence that the health care provider did not supply information regarding such treatment, procedure or surgery to the extent customarily given to patients, or other persons authorized to give consent for patients, by other licensed health care providers with similar training and/or experience in the same or similar health care communities as that of the defendant at the time of the treatment, procedure or surgery.

Prior to trial, the plaintiffs filed a Petition for Reconsideration of the Superior Court's decision, and included a supplemental letter report dated April 18, 1996, in which Dr. Yablon elaborated on his opinion that Dr. Gibbs had failed to secure informed consent prior to performing the aneurysm surgery. In that letter, Dr. Yablon opined, in pertinent part, as follows:

The information which I believe should have been conveyed to Dr. Barriocanal by Dr. Gibbs so that he could render his "informed consent["] was as follows: ...

vi) Dr. Gibbs should have conveyed the paucity of his recent aneurysm surgery including no such operations in the prior year.

vii) The difference in hospital staffing with regard to surgery being performed on a holiday (Easter) as compared with a normal business day should have been

discussed so that Dr. Barriocanal could have made an informed judgment on whether to proceed with surgery at Christiana on Sunday or wait until Monday when additional staffing was available.

viii) Dr. Gibbs should have offered Dr. Barriocanal all of the options available including ... transfer to a teaching institution.

The record does not reflect whether or not the motion was reconsidered.[1] In any event, the evidence was excluded. At trial, the Superior Court permitted plaintiffs' counsel to make a record of the excluded evidence. Dr. Yablon indicated that he would have testified in accordance with his opinions set forth in his letter of April 18, 1996.

Following a jury verdict in favor of Dr. Gibbs, the Barriocanals moved for a new trial on two grounds: (1) that defense counsel made unduly prejudicial statements during closing arguments, and (2) that certain evidence central to the Barriocanals' informed consent claim was improperly excluded. The Superior Court denied the motion, holding, as to the excluded evidence, that Dr. Yablon failed to "bridge the gap regarding the elements of informed consent, i.e., that neurosurgeons in this community would reveal to a patient the nature and recency of similar surgery, the composition of the surgical team, and the availability of alternate treatment centers."[2]

The remarks of defense counsel that plaintiffs claimed to be prejudicial were as follows:

[Plaintiffs' counsel] talked to you in his opening about the American dream, how the [plaintiff] Doctor Barriocanal came to America, was an immigrant and came to America from Paraguay. He's an example of the American dream. He came here to seek his fortune. He certainly has done well. We saw income tax returns of 190 thousand dollars gross in 1992. I guess that is the American dream come true.

But I'm afraid you're being asked here today to support a new and different view of the American dream, the medical malpractice lottery wheel. We have a bad outcome, we have a tragedy, and we turn it into cash. That is the new American dream.[3]

The trial court also denied the motion for a new trial as it relates to these remarks, stating that, while defense counsel's remarks were improper, they did not prejudicially affect the substantial rights of the plaintiffs. From this decision, the plaintiffs appeal.

### Standard and Scope of Review

An appeal from a trial court's denial of a motion for new trial is governed by an abuse of discretion standard of review.[4] Where, as here, the appeal is grounded on allegations that the trial court erred as a matter of law or abused its discretion in certain evidentiary rulings, this Court will first consider whether the specific rulings at issue were correct.[5] "If the court finds error or abuse of discretion in the rulings, it must then determine whether the mistakes constituted 'significant prejudice so as to have denied the appellant a fair trial.'"[6]

### The Law of Informed Consent

In Delaware, informed consent in the context of medical malpractice is defined by statute. The patient must demonstrate that the health care provider failed to supply information "customarily given" by other "licensed health care providers with similar training and/or experience in the same or

**1.** *Jose Alberto Barriocanal, et al. v. Martin Gibbs, M.D.,* Super.Ct., C.A. No. 94C–04–044 (July 3, 1996) (ORDER) at 7.

**2.** *Id.*

**3.** The Barriocanals also objected to other remarks at the end of defense counsel's closing argument. Those remarks related to defense counsel's arguably presumptuous suggestions to the jury about how to check off the special interrogatory form to answer the questions presented

to them on informed consent and the standard of care. This appears to have been cured by the trial judge *sua sponte* and need not concern us here.

**4.** *Strauss v. Biggs,* Del.Supr., 525 A.2d 992, 996–97 (1987).

**5.** *Id.* at 997.

**6.** *Id.* (citation omitted).

similar health care communities as that of the defendant at the time of the treatment, procedure or surgery."[7] In defining "informed consent," 18 *Del.C.* § 6801(6) provides:

(6) "Informed consent" means the consent of a patient to the performance of health care services by a health care provider given after the health care provider has informed the patient, to an extent reasonably comprehensible to general lay understanding, of the nature of the proposed procedure or treatment and *of the risks and alternatives to treatment or diagnosis which a reasonable patient would consider material to the decision whether or not to undergo the treatment or diagnosis.*[8]

The plain language of section 6852 requires a plaintiff to produce both evidence of the standard of care (i.e., "information regarding [the relevant] treatment, procedure or surgery to the extent customarily given to patients, or other persons authorized to give consent for patients, by other licensed health care providers with similar training and/or experience in the same or similar health care communities as that of the defendant at the time of the treatment, procedure or surgery") and evidence of whether the health care provider met that standard (i.e., the information that the health care provider actually supplied at the time of the treatment, procedure or surgery).[9]

### Application to this Case

The record indicates that Dr. Yablon was prepared to testify in accordance with his opinions set forth in a letter of April 18, 1996. As noted above, Dr. Yablon specifically opined:

The information which I believe should have been conveyed to Dr. Barriocanal by Dr. Gibbs so that he could render his "informed consent["] was as follows:

\*　　\*　　\*　　\*　　\*　　\*

vi) Dr. Gibbs should have conveyed the paucity of his recent aneurysm surgery

including no such operations in the prior year.

vii) The difference in hospital staffing with regard to surgery being performed on a holiday (Easter) as compared with a normal business day should have been discussed so that Dr. Barriocanal could have made an informed judgment on whether to proceed with surgery at Christiana on Sunday or wait until Monday when additional staffing was available.

viii) Dr. Gibbs should have offered Dr. Barriocanal all of the options available including … transfer to a teaching institution.

At trial, Dr. Yablon testified on voir dire, outside of the presence of the jury, that it was the "standard of care" to provide these three types of information. The following exchange took place when Dr. Yablon testified on voir dire:

Q. Doctor, if permitted in this case, would you have testified in accordance with the opinions that are set forth in this letter of April 18, 1996?

A. Yes, sir.

Q. And in your opinion, was the information that was contained in this letter of April 18, 1996, information that was required within the standard of care to have been conveyed by Dr. Gibbs to Dr. Barriocanal?

A. Yes.

Thus the plaintiffs proffered testimony that tended to show that Dr. Gibbs' failure to inform his patient of his lack of recent aneurysm surgery, of the difference in hospital staffing on a holiday, and of the option of transfer to a teaching institution, fell below the applicable standard of care required to obtain informed consent. To exclude this evidence was reversible error.

We conclude that the Superior Court's interpretation of section 6852 erroneously required an expert to articulate certain "magic words." This interpretation would exalt form over substance. Rather, the trial court

---

7. 18 *Del.C.* § 6852(a)(2).

8. 18 *Del.C.* § 6801 (emphasis supplied).

9. 18 *Del.C.* § 6852

should have evaluated the substance of the proffered testimony as a whole to determine if it was sufficiently reliable to present to the jury. The jury's role then would be to evaluate the weight of the testimony.

The expert witness, Dr. Yablon, is a physician, not a lawyer. The fact that he did not express his medical opinions in perfect "legalese" should not preclude him from being able to present expert testimony regarding Delaware's standard of care, the information necessary to obtain informed consent and whether the defendant met those standards prior to performing brain aneurysm surgery on Mrs. Barriocanal on April 19, 1992. The thrust of Dr. Yablon's proffered testimony plainly addresses the substance of the statutory standard. This common sense interpretation is in keeping with this Court's decision in *Loftus v. Hayden,* construing 18 *Del.C.* § 6854, the portion of the Delaware Health Care Malpractice Insurance and Litigation Act that addresses .expert witnesses.[10] Therefore, we conclude that the Superior Court abused its discretion by excluding Dr. Yablon's testimony.

Our interpretation of Section 6852 comports with the capabilities of the jury system and of the adversary system generally. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[11] Additionally, in the event that the trial court concludes that the evidence presented in support of a position on informed consent is legally insufficient for a reasonable jury to find for that party on that issue, the trial court may grant a motion for judgment as a matter of law against that party with respect to the informed consent claim.[12] The court may also grant summary judgment.[13] These conventional devices, rather than wholesale exclusion, are the appropriate safeguards where the proffered testimony addresses the substance of the statutory standard for informed consent.

■ Next, we must determine whether the exclusion of the proffered testimony constituted "significant prejudice so as to have denied the appellant a fair trial."[14] By statute in Delaware, a health care provider is required to disclose "the risks and alternatives to treatment or diagnosis which a reasonable patient would consider material to the decision whether or not to undergo the treatment or diagnosis."[15] We find that the type of "qualification" information at issue in this case was relevant to the issue of informed consent. Because the excluded evidence went to "the very heart" of plaintiffs' case and "might well have affected the outcome" of the trial, the exclusion of this evidence warrants a new trial.[16] In view of the fact that the plaintiffs did not appeal the jury verdict on their negligence claim, we reverse in part the judgment below and remand for a new trial on the issues of informed consent and damages.

### Propriety of Defense Counsel's Remarks

We need not address the plaintiffs' second claim that defense counsel's closing remarks quoted above were improper and constituted reversible error. They were certainly improper. This Court has held that, "[a]ny effort to mislead the jury or appeal to its bias or prejudice is inappropriate and, where objection is made, the trial court is obliged to act firmly with curative instructions even where no objection is forthcoming until after summations."[17] Although the remarks were improper, we need not decide whether the trial court committed reversible error be-

10. See *Loftus v. Hayden,* Del.Supr., 391 A.2d 749, 752 (1978).

11. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993). *See also State v. Cephas,* Del.Supr., 637 A.2d 20, 28 (1994); *Beattie v. Beattie,* Del.Supr., 630 A.2d 1096, 1099 (1993).

12. Super.Ct.Civ.R. 50(a).

13. Super.Ct.Civ.R. 56.

14. *Strauss,* 525 A.2d at 997.

15. 18 *Del.C.* § 6801(6).

16. See *Watts v. Delaware Coach Co.,* Del.Supr., 58 A.2d 689, 696 (1948).

17. *DeAngelis v. Harrison,* Del.Supr., 628 A.2d 77, 80 (1993) (citing *Massey–Ferguson, Inc. v. Wells,* Del.Supr., 421 A.2d 1320, 1324 (1980)).

cause this case must be retried. We assume that this conduct will not be repeated at the next trial.

### Conclusion

We conclude that the law of informed consent, as articulated in the statute, requires a common sense application as noted herein. The trial court committed reversible error in excluding the proffered expert testimony. Accordingly, we reverse in part and remand for a new trial of plaintiffs' informed consent claim.