HERMAN ALSWANGER ET AL. *v.*
DOUGLAS R. SMEGO ET AL.
(SC 16309)

Sullivan, C. J., and Borden, Norcott, Zarella and Axelrod, Js.

Argued February 15—officially released July 24, 2001

*Mario DiNatale*, with whom were *Paul A. Slager* and, on the brief, *Richard A. Silver*, for the appellants (plaintiffs).

*Garie J. Mulcahey*, with whom, on the brief, was *Heidi M. Priwall*, for the appellee (named defendant).

*Deborah S. Chang,* for the appellee (defendant Stamford Hospital).

*Opinion*

NORCOTT, J. The issue in this appeal[1] is whether allegations asserted in an amended complaint related back to the original complaint and, therefore, were timely under General Statutes § 52-584.[2] The plaintiffs, Herman Alswanger (Alswanger) and his wife, Myrna Alswanger, appeal from the judgment of the trial court granting summary judgment in favor of the defendants. The plaintiffs claim that the trial court improperly reached one or more of the following conclusions of law: (1) that the amendments to the informed consent allegation necessarily stated a claim for battery, rather than negligence, and thus stated a new cause of action that did not relate back to the plaintiffs' original complaint; (2) that the fact that an inexperienced resident would perform significant parts of a patient's surgery was not material information that a patient should be told before giving his informed consent, and, accordingly, that there was no actionable negligence; and (3) that the plaintiffs' amended allegations of the defendants' negligence in obtaining Alswanger's consent arise from a different set of facts than the allegations of the original complaint, and, accordingly, were time-

---

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1, and General Statutes § 51-199 (c).

[2] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

barred because they did not relate back either to the plaintiffs' informed consent allegations, or to the plaintiffs' general negligence allegations in the original complaint. We conclude that the allegations in the plaintiffs' amended complaint alleging lack of informed consent regarding a resident's participation in the surgery arose from a different set of facts than the allegations set forth in the original complaint. The amended complaint, therefore, did not relate back and was barred under the statute of limitations. Accordingly, we affirm the judgment of the trial court.[3]

The plaintiffs initiated this action against the defendants, Douglas R. Smego, a physician, and Stamford Hospital (hospital), alleging, inter alia, that the defendants failed to advise the plaintiffs of all material risks involved in a certain surgical procedure. The plaintiffs then filed an amended complaint, specifically alleging that the defendants failed to obtain Alswanger's consent to the participation of a surgical resident, Jay Dewell, as a co-operating surgeon. The defendants filed motions for partial summary judgment with respect to this allegation, claiming that it was a new claim that did not relate back to the original complaint and, therefore, was barred by the applicable statute of limitations. The court granted the defendants' motions for summary judgment. The plaintiffs withdrew their other informed consent allegations and the case went to trial on the

---

[3] It is important to note that this decision is limited to the issue of whether the allegations in the amended complaint arose from a different set of facts than those alleged in the original complaint. The judgment of the trial court similarly was limited to this issue. Contrary to the claims set forth in the plaintiffs' briefs, the trial court did not conclude that the amendments necessarily stated a claim for battery; nor did the trial court conclude that a patient is without the right to know the identity and experience level of those participating in his or her own surgery. At oral argument before this court, the plaintiffs acknowledged the trial court's limited holding. Accordingly, we decline to address the underlying issues involved in the plaintiffs' other claims.

remaining issues. The court granted the hospital's motion for a directed verdict.[4] Thereafter, the jury returned a verdict in favor of Smego. The court, subsequently, denied the plaintiffs' motion to set aside the verdict and rendered judgment for Smego. This appeal followed.

The following facts are relevant to our disposition of this appeal. Smego had been treating Alswanger for a recurring superficial phlebitis condition of the right greater saphenous vein in his leg since 1986. Because of recurring problems, the parties agreed in January, 1990, that Smego would perform a surgical procedure to ligate and strip Alswanger's right greater saphenous vein. The surgery was performed on March 19, 1990, by Smego and Dewell, a first year medical resident. Immediately after the surgery, Alswanger experienced pain from his groin down into his right leg. The pain continued throughout Alswanger's postoperative treatment with Smego, which lasted until June, 1990. Alswanger's pain finally subsided when a second surgery was performed on May 1, 1991, by a different physician.

Thereafter, the plaintiffs filed a complaint against the defendants on June 16, 1992. The complaint alleged that Smego was negligent in sewing through a nerve in Alswanger's upper thigh with permanent silk sutures, and in failing to disclose "all material risks involved in connection with his care and treatment, including the nature and possible consequences of the operation, the prospects of success, the prognosis if the procedure was not performed, and alternative methods of treatment available . . . ." The complaint also included a general negligence allegation that the defendants "failed to exercise that degree of care, skill, and/or diligence

---

[4] In granting the hospital's motion for a directed verdict, the court concluded that Dewell was the "borrowed servant" of Smego during the surgical procedure. Thus, Dewell's negligence, if any, could not be imputed to the hospital.

ordinarily employed by surgeons under similar circumstances . . . ."

On March 2, 1998, the plaintiffs filed an amended complaint. The relevant portions of the amended complaint restated the allegations of the original complaint and added claims of negligence relating to Dewell's involvement in the surgical procedure. Specifically, the amended complaint alleged that Smego was negligent "in that he failed to disclose to and inform [Alswanger] of all material risks involved in connection with his surgery, care and treatment, including but not limited to the nature and possible consequences of the operation, the prospects of success, the prognosis if the procedure was not performed, the alternative methods of treatment available, *and the fact that a medical resident, Jay Dewell, M.D., would participate as a co-operating surgeon* . . . ." (Emphasis added.) The amended complaint also alleged that Smego was negligent "in that the operation was performed without the consent of [Alswanger] to the participation of Jay Dewell, M.D., as a co-operating surgeon . . . ."

The defendants each objected to the plaintiffs' proposed amendment. The court, *D'Andrea, J.,* granted the plaintiffs' motion to amend the complaint, but explicitly declined to address the legal sufficiency of the new allegations, stating that those issues would be more appropriately addressed through other procedural vehicles. In answering the amended complaint, the defendants each asserted a special defense, claiming that the plaintiffs' amended allegations were barred by the applicable statute of limitations, § 52-584. The defendants, thereafter, each moved for summary judgment, again alleging that the plaintiffs' amended claim was barred by the statute of limitations.

The court, *Tierney, J.,* granted the summary judgment motions on August 17, 1998, and, in doing so,

explained the relation back doctrine. "It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same. But where an entirely new and different factual situation is presented, a new and different cause of action is stated. In the event that a new and different factual situation is presented, any amendment will not relate back to the initial commencement of the lawsuit unless the original pleading had given a fair notice to the adverse party that a claim is being asserted against him for some particular transaction or occurrence." The general rule, the court explained, would be to consider whether it would permit the admission of evidence relating to the consent of Dewell's involvement in the surgery under the original complaint. Under this precept, the court determined that the original complaint lacked any allegations that there was a failure to obtain informed consent to Dewell's participation and, therefore, concluded that such evidence would not have been admitted. Accordingly, the court concluded that the amended complaint did not relate back to the original complaint and, therefore, granted the defendants' motions for summary judgment.

The relation back doctrine has been well established by this court. "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does

not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated. . . . Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . . ." (Citation omitted; internal quotation marks omitted.) *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 263–64, 654 A.2d 748 (1995).

Two cases in particular are illustrative of this court's approach to the relation back doctrine. In *Sharp* v. *Mitchell*, 209 Conn. 59, 60, 546 A.2d 846 (1988), three men were asphyxiated in an underground fuel storage facility during the course of their employment. The plaintiffs, the administrators of the decedents' estates, alleged a wrongful death action based on negligent supervision in their first complaint. Id., 73. They subsequently amended their complaint to allege that the defendant had negligently designed and constructed the storage facility. Id. In concluding that the amended complaint did not relate back to the original complaint, the court held that "[t]hese complaints involve two different sets of circumstances and depend on different facts to prove or disprove the allegations of a different basis of liability. . . . The defendants did not have fair notice of the claim of negligent construction and design of the underground storage area when the original complaint merely alleged that [the defendant] was negligent in ordering the employees to enter the area." Id. Moreover, the court noted that "[t]he fact that the same defendant is accused of negligence in each complaint

and the same injury resulted . . . does not make any and all bases of liability relate back to an original claim of negligence." Id.

This court came to a different conclusion in *Gurliacci* v. *Mayer*, 218 Conn. 531, 590 A.2d 914 (1991). In that case, the plaintiff claimed that she had suffered injuries when her vehicle was struck in the rear by a driver who was intoxicated. Id., 534. The plaintiff's first complaint alleged that the defendant had acted negligently in operating his automobile while he was intoxicated. Id., 546. After the relevant limitations period had passed, the plaintiff amended her complaint to add allegations that the defendant had acted either wilfully, wantonly and maliciously, or outside the scope of his employment. Id. In distinguishing *Gurliacci* from *Sharp*, we explained that the amendment in *Sharp* was significant because "the defendant would have been required to gather different facts, evidence and witnesses to defend the amended claim." Id., 549. In *Gurliacci*, however, the amendment "did not inject two different sets of circumstances and depend on different facts . . . ." (Citation omitted; internal quotation marks omitted.) Id. Accordingly, we concluded that the amended complaint related back to the original complaint. Id., 546.

In the present case, we are faced with an amended complaint, filed after the statute of limitations had expired, alleging an act of negligence based on a different set of facts from that alleged in the original complaint. Although the focus of the original complaint was on the informed consent as it related to the surgical procedure itself, the amended complaint shifted the focus to consent by the patient to the participation of the individuals involved in the surgery. For example, the amended complaint would have required evidence as to Dewell's actual and specific role in the surgery, his experience, whether the plaintiffs were informed of the role he would play and his experience, whether the

defendants were required to provide that information to the plaintiffs, and the hospital's policy, as a teaching hospital, regarding a resident's involvement in surgery. Any discussion as to much of this evidence, however, would have been irrelevant under the original complaint, which asked whether the defendants adequately informed the plaintiffs regarding the surgical procedure. As in *Sharp*, the amendment in the present case would have forced the defendants "to gather different facts, evidence and witnesses to defend the amended claim." *Gurliacci* v. *Mayer*, supra, 218 Conn. 549. Accordingly, the trial court properly disallowed the relation back of the amended complaint.

The plaintiffs claim that their amended complaint set forth only a more specific informed consent allegation and, therefore, the defendants were on notice that a lack of consent to Dewell's participation was an issue they could raise. We disagree that the amendments gave the defendants adequate notice. All of the informed consent cases in Connecticut have involved the adequacy of information disclosed regarding the procedure and treatment to be performed. See, e.g., *Fabrizio* v. *Glaser*, 237 Conn. 25, 26, 675 A.2d 844 (1996) (alleging lack of informed consent for extraction of wisdom teeth); *Pedersen* v. *Vahidy*, 209 Conn. 510, 512, 552 A.2d 419 (1989) (alleging lack of informed consent for failure to disclose risks associated with lipoma removal); *Shelnitz* v. *Greenberg*, 200 Conn. 58, 60, 509 A.2d 1023 (1986) (alleging lack of informed consent for failure to disclose spinal headache as risk of myelogram procedure); *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 284, 465 A.2d 294 (1983) (alleging lack of informed consent for failure to disclose alternatives to percutaneous renal biopsy). In *Logan* v. *Greenwich Hospital Assn.*, supra, 292, we held that informed consent involves four specific factors: (1) the nature of the procedure; (2) the risks and hazards of the procedure; (3)

the alternatives to the procedure; and (4) the anticipated benefits of the procedure. We are not aware of any case adjudicated by this court where the identity and qualifications of the participants in the procedure, and the policies of teaching hospitals, constituted a lack of informed consent claim. Thus, the defendants were reasonable in assuming that the originally alleged negligence involved only the procedure itself. Our case law supports the notion that the defendants had no reason to be on notice that informed consent to the surgical staff team was in issue.[5]

The amended complaint, although alleging negligence related to the same surgery as the original complaint, had its basis in a different set of facts from the original complaint. That the injuries alleged and the parties involved in each complaint were identical did not eliminate the fact that the complaints were based on different facts. *Sharp* v. *Mitchell*, supra, 209 Conn. 73.

The judgment is affirmed.

In this opinion SULLIVAN, C. J., and BORDEN and ZARELLA, Js., concurred.

AXELROD, J., dissenting. I respectfully disagree with the result and the reasoning of the majority opinion.

The dispositive issue in this appeal is whether the plaintiffs' amended allegations of the defendants' negligence in obtaining the informed consent of the named plaintiff arise from a different set of facts than the allegations of the original complaint, and, accordingly, are time-barred because they do not relate back to the

---

[5] Our holding should not be read to suggest that informed consent does not involve a patient's right to know the identity and qualifications of the surgical team involved in the patient's procedure. Rather, we make no comment on that issue. We cite these cases only to demonstrate the validity and reasonableness of the defendants' surprise.

plaintiffs' informed consent allegations in the original complaint.

The relevant portions of the first count of the plaintiffs' original complaint provide in part: "3. On January 19, 1990, plaintiff [Herman Alswanger] came to [the named defendant, Douglas R. Smego's] office for an exam. During the exam, [Smego] diagnosed plaintiff's discomfort as being caused by recurrent phlebitis and discussed the operative procedure of ligation and stripping the greater saphenous vein (essentially a varicose vein repair in which the vein is tied off and excised). [Smego] recommended that the plaintiff undergo such an operation and informed the plaintiff that such an operation would be performed on a day surgery basis at The Stamford Hospital (hereinafter, 'Hospital').

"4. The plaintiff continued to treat with [Smego] in connection with his discomfort and tenderness from January, 1990 through March 19, 1990.

"5. On March 19, 1990, the plaintiff arrived at the Hospital for his surgery, which [Smego] performed under general anesthesia with the assistance of a Hospital resident, Jay Dewell, M.D. . . .

"21. The plaintiff's injuries and deficits were caused by the negligence of [Smego] in one or more of the following respects . . .

"e. in that he failed to disclose to and inform plaintiff of all material risks involved in connection with his care and treatment, including the nature and possible consequences of the operation, the prospects of success, the prognosis if the procedure was not performed, and alternative methods of treatment available . . . ."

The relevant portions of the first count of the plaintiffs' amended complaint provide in part: "3. On January 19, 1990, plaintiff came to [Smego's] office for an exam. During the exam, [Smego] diagnosed plaintiff's discom-

fort as being caused by recurrent phlebitis and discussed the operative procedure of ligation and stripping the greater saphenous vein (essentially a varicose vein repair in which the vein is tied off and excised). [Smego] recommended that the plaintiff undergo such an operation and informed the plaintiff that he would perform such an operation on a day surgery basis at The Stamford Hospital (hereinafter, 'Hospital'). *[Smego] did not state to plaintiff at any time that another physician would be operating on him.*

"4. The plaintiff continued treatment with [Smego] in connection with his discomfort and tenderness from January 1990 through March 1990. In particular, plaintiff agreed to have Smego perform the saphenous vein surgery, *but did not agree to have any other physician perform it.*

"5. On March 19, 1990, the surgery was performed at the Hospital under general anesthesia by [Smego] and, *without the knowledge of the plaintiff, by Hospital resident Jay Dewell, M.D. . . .*

"21. The plaintiff's injuries and deficits were caused by the negligence of [Smego] in one or more of the following respects . . .

"e. in that he failed to disclose to and inform plaintiff of all material risks involved in connection with his surgery, care and treatment, including but not limited to the nature and possible consequences of the operation, the prospects of success, the prognosis if the procedure was not performed, the alternative methods of treatment available, *and the fact that a medical resident, Jay Dewell, M.D. would participate as a co-operating surgeon;*

"f. *in that the operation was performed without the consent of the plaintiff to the participation of Jay*

*Dewell, M.D. as a co-operating surgeon . . . ."* (Emphasis added.)

The relation back doctrine has been established by this court. "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which established the existence of that right and that delict constitutes the cause of action. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated. . . . *Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations*, namely, to protect parties from having to defend against stale claims . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 263–64, 654 A.2d 748 (1995).

The majority opinion cites *Gurliacci* v. *Mayer*, 218 Conn. 531, 590 A.2d 914 (1991), as illustrative of the court's approach to the relation back doctrine. In *Gurliacci*, the plaintiff's original complaint alleged that the defendant had acted negligently in operating his automobile while he was intoxicated. Id., 546. The proposed

amendment sought to add allegations that the defendant had acted either wilfully, wantonly or maliciously, or outside the scope of his employment. Id. In allowing the amendment under the doctrine of relation back, the court stated that the "new allegations did not inject two different sets of circumstances and depend upon different facts . . . but rather amplified and expanded upon the previous allegations by setting forth alternative theories of liability. The fact that the new allegations had the potential effect of taking the claim outside the operation of the fellow employee immunity rule does not negate the identity of the cause of action. . . . *[The defendant] had adequate notice that a claim was being asserted against him arising out of the alleged motor vehicle accident.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 549.

In the present case, Smego had adequate notice that a claim was being asserted against him under the doctrine of lack of informed consent. He also had adequate notice that there was a claim that Dewell was involved in the surgery. The cause of action that originally was based on lack of informed consent and the new allegations did not negate "the identity of the cause of action." Id.

The majority holds that the focus of the original complaint was on the informed consent as it related to the surgical procedure itself, and that the amended complaint shifted the focus to consent by the patient to the participation of the individuals involved in the surgery. I respectfully disagree. The leading case in Connecticut on informed consent is *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 465 A.2d 294 (1983). In that case, the court held as follows: "In some of our cases, where the claim against the physician was contractual in nature, we have recognized the importance of informing the patient of certain aspects of the contemplated treatment or surgical procedure. . . . *The failure to make*

*a sufficient disclosure, which is ordinarily the basis for claiming lack of informed consent, has been regarded by most courts as presenting the question, not whether there was an effective consent which would preclude an action for battery, but whether the physician had fulfilled his duty of informing the patient under the appropriate standard.* . . . In a trilogy of cases decided in 1972 the traditional standard of customary medical practice in the community was abandoned by three jurisdictions as the criterion for informed consent in favor of a judicially imposed standard designed to provide a patient with information material to his decision upon a course of therapy." (Citations omitted; emphasis added.) Id., 288–91.

More recently in *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 137 n.3, 757 A.2d 516 (2000), this court again recognized that "[t]he consent necessary to preclude a claim for assault and battery is different from the consent at issue on a claim of lack of informed consent, *where the issue is whether a sufficient disclosure was made.*" (Emphasis added.) In that case, the focus of the complaint regarding informed consent did not relate to the surgical procedure itself, but rather, related to whether the physician had fulfilled his duty of making a sufficient disclosure to the patient under the appropriate standard. Id., 143.

"Unlike the traditional action of negligence, a claim for lack of informed consent focuses not on the level of skill exercised in the performance of the procedure itself but on the adequacy of the explanation given by the physician in obtaining the patient's consent." *Dingle* v. *Belin*, 358 Md. 354, 369–70, 749 A.2d 157 (2000).

In holding that the focus of the original complaint on the informed consent related to the surgical procedure itself and that the amendment shifted the focus to consent by the patient to the participation of the individual

involved in the surgery, the majority opinion states that "[f]or example, the amended complaint would have required evidence as to Dewell's actual and specific role in the surgery, his experience, whether the plaintiffs were informed of the role he would play and his experience, whether the defendants were required to provide that information to the plaintiffs, and the hospital's policy, as a teaching hospital, regarding a resident's involvement in surgery. Any discussion as to much of this evidence, however, would have been irrelevant under the original complaint, which asked whether the defendants adequately informed the plaintiffs regarding the surgical procedure."

All potential amendments to a complaint require that there be some new evidence presented. Thus, in *Gurliacci* v. *Mayer*, supra, 218 Conn. 546, the amendment to the complaint would have required new evidence as to whether the defendant was acting either wilfully, wantonly or maliciously. Further, the amendment to the complaint would have required evidence as to whether the defendant was operating the motor vehicle outside the scope of his employment. Id. The fact that new evidence would be required in *Gurliacci* was not the determining factor as to whether the amendment would relate back to the original complaint. The amendment was allowed in *Gurliacci* in part because the defendant had adequate notice that a claim was being asserted against him arising out of the alleged motor vehicle accident and the amended complaint reiterated the negligence claim based on his operation of a motor vehicle. Id., 549.

In *Gurliacci*, the court held that "[w]e have previously recognized that our relation back doctrine is akin to rule 15 (c) of the Federal Rules of Civil Procedure, which provides in pertinent part: (c) RELATION BACK OF AMENDMENTS. Whenever the claim or defense asserted in the amended pleading arose out

of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. . . . The policy behind rule 15 (c) is that a party, once notified of litigation based upon a particular transaction or occurrence, has been provided with all the notice that statutes of limitations are intended to afford. . . . Because rule 15 provides that an amendment relates back where the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims, is fully served." (Citations omitted; internal quotation marks omitted.) Id., 547–48.

Other courts have ruled that amendments similar to the one in the present case would relate back to the date of the original complaint. The issue of amending a complaint in a medical malpractice action to allege lack of informed consent was addressed in *Azarbal* v. *Medical Center of Delaware, Inc.*, 724 F. Sup. 279, 281–83 (D. Del. 1989), wherein the court stated: "The complaint alleges that the defendants were negligent in the performance of the amniocentesis. The complaint seeks damages for the child's injuries and for the parents' injuries resulting from the child's illness and death. On April 10, 1989, the plaintiffs filed this motion to amend the complaint. Plaintiffs seek to amend the complaint in six respects. First, the plaintiffs seek to add a claim against [the physician] for failing to obtain the informed consent of [the child's mother] prior to performing the amniocentesis . . . . The court will first address the propriety of allowing the amendment alleging lack of informed consent to the amniocentesis. [The physician] contends that this amendment would be futile because it is barred by the statute of limitations. The limitations period for bringing medical malpractice

actions is two years. . . . Since the amniocentesis occurred more than two years before the motion to amend was filed, the informed consent claim would be barred were it not for Federal Rule of Civil Procedure 15 (c). . . . This court finds that the original complaint gave [the physician] adequate notice of the basis of the claim regarding lack of informed consent to the sterilization . . . . This court believes the original complaint provided adequate notice of any claims [the mother] would have arising from the amniocentesis, including a claim that [the physician] should have revealed that the procedure had caused fetal injury. The claim therefore relates back to the date of the original complaint and is not time-barred. The court will thus allow the plaintiffs to amend this claim to their complaint." (Citation omitted; internal quotation marks omitted.)

I believe, just as in *Azarbal*, that the original complaint in the present case provided adequate notice of any claims the plaintiffs would have arising from the surgery, including a claim that Smego should have revealed that Dewell would be performing the surgery. Under rule 15 (c) of the Federal Rules of Civil Procedure, an amendment to a malpractice action to allege lack of informed consent after the statute of limitations has run relates back to the original complaint. Therefore, an original complaint sounding in malpractice that includes a claim of lack of informed consent should allow an amendment to the lack of informed consent claim after the statutes of limitations has run, and that amendment should relate back to the original complaint. Several New York courts have taken the same position as the court in *Azarbal*. Thus, in *Grosse* v. *Friedman*, 118 App. Div. 2d 539, 541, 498 N.Y.S.2d 863 (1986), and in *Ecker* v. *Hopkins*, 161 App. Div. 2d 1163, 555 N.Y.S.2d 959 (1990), medical malpractice actions were allowed to be amended to add a cause of action

for lack of informed consent after the statute of limitations had run. In *Ecker*, the court stated that "[the] Supreme Court erred in concluding that [the] plaintiff's proposed amendment to her medical malpractice complaint was time barred. Although [the] plaintiff sought to amend by adding a new cause of action for lack of informed consent more than two and one-half years after [the] defendants' last treatment of [the] plaintiff . . . the facts alleged in the original complaint gave adequate notice of the transactions or occurrences asserted in the proposed amended complaint, and thus, the amendment is deemed to have been interposed at the time the original claims were interposed . . . ." (Citations omitted.) Id.

In *Johnson* v. *Kokemoor*, 199 Wis. 2d 615, 620, 545 N.W.2d 495 (1996), a patient brought an action against a surgeon alleging failure to obtain her informed consent to surgery. The court stated: "In this case information regarding a physician's experience in performing a particular procedure, a physician's risk statistics as compared with those of other physicians who perform that procedure, and the availability of other centers and physicians better able to perform that procedure would have facilitated the plaintiff's awareness of 'all of the viable alternatives' available to her and thereby aided her exercise of informed consent." Id., 623. "We reject the defendant's proposed bright line rule that it is error as a matter of law to admit evidence in an informed consent case that the physician failed to inform the patient regarding the physician's experience with the surgery or treatment at issue." Id., 639. "When different physicians have substantially different success rates, *whether surgery is performed by one rather than another represents a choice between 'alternate, viable medical modes of treatment'* . . . ." (Emphasis added.) Id., 645.

In *Barriocanal* v. *Gibbs*, 697 A.2d 1169, 1170 (1997), an action was brought against a surgeon claiming lack of informed consent and negligence in performing the surgery. In reversing the trial court's exclusion of the plaintiff's proffered expert testimony that the surgeon had breached the applicable standard of care required to obtain informed consent by failing to inform the patient of the surgeon's lack of recent aneurysm surgery, the court stated: "Next, we must determine whether the exclusion of the proffered testimony constituted 'significant prejudice so as to have denied the appellant a fair trial.' By statute in Delaware, a health care provider is required to disclose 'the *risks and alternatives* to treatment or diagnosis which a reasonable patient would consider material to the decision whether or not to undergo the treatment or diagnosis.' " (Emphasis added). Id., 1173.

In *Dingle* v. *Belin*, supra, 358 Md. 357, the plaintiff retained a surgeon to remove her gallbladder. The surgeon was assisted by a medical student and a resident, who was just beginning her fourth year of residency training. Id., 358. The resident dissected the gallbladder and removed it. Id. The plaintiff filed a battery count that was dismissed. She also filed a breach of contract claim and counts for negligence arising from the lack of informed consent. Id., 359. The thrust of the lack of informed consent count was that without the plaintiff's knowledge or consent, the resident played a very active role in the surgery and did the cutting, clamping and stapling, which should have been performed by the surgeon retained by the plaintiff. Id. The claim was that by failing to inform the plaintiff of the scope of responsibilities that would be performed by the resident, the surgeon and the resident " 'breached their duty to secure the fully informed consent of [the plaintiff] prior to commencing operating upon her.' " Id. The court stated that the "[r]isks, benefits, collateral effects,

and alternatives normally must be disclosed routinely, but other considerations, at least if raised by the patient, may also need to be discussed and resolved. See Aaron D. Twerski & Neil B. Cohen, 'The Second Revolution in Informed Consent: Comparing Physicians to Each Other,' 94 Nw. U. L. Rev. 1 (1999); *Johnson* v. *Kokemoor*, [supra, 199 Wis. 2d 615]. One of those considerations, in an expanding era of more complex medical procedures, group practices, and collaborative efforts among health care providers, may be who, precisely, will be conducting or superintending the procedure or therapy. This may be especially important with respect to surgical procedures, which usually involve collaboration between the chosen surgeon and other medical professionals who may be unknown to the patient. The physician, as [the surgeon] indicated was the case here, may be unwilling to accept limitations on the actual performance of the surgery, *but, if the identity of the persons who will be performing aspects of the surgery is important to the patient, the matter must be discussed and resolved.*" (Emphasis added.) *Dingle* v. *Belin*, supra, 370.

The original complaint in the present case alleged lack of informed consent for failure to inform the plaintiffs of material risks involved and alternative methods of treatment available. The proposed amendments amplified and expanded upon those previous allegations by setting forth the claim that the failure to inform the plaintiffs that Dewell would be a co-operating surgeon failed to disclose to the plaintiffs the risks and alternatives to the treatment. Under the amendment, the identity of the cause of action remains substantially the same. The actionable occurrence in the original complaint and in the amendment is lack of informed consent. Smego had fair notice of the claim of lack of informed consent in the original complaint, and the amendment amplified and expanded on that claim.

I would hold that informed consent does involve a patient's right to know the identity and qualifications of the surgeons involved in the patient's procedure. I would not reach, at this time, the issue of a hospital's policy, such as a teaching hospital, regarding a resident's involvement in surgery and whether that involvement has to be unmasked to the patient.

Accordingly, I would find that the trial court improperly granted Smego's motion for summary judgment, and I would remand the case for a new trial limited to the issue of lack of informed consent against Smego and the issue of damages.