SLOVITER, Circuit Judge.
Appellant Teague Conaway[1] (hereinafter “T.C.”) appeals the District Court’s grant of summary judgment in favor of defendant doctors and medical institutions. We will affirm.[2]
I.
T.C. was born with a life-threatening congenital heart defect, hypoplastic left heart syndrome. The standard treatment for this condition is a multi-stage process, involving three open-heart surgeries over a period of years. The objective of these surgeries is to alter the physiology of the patient such that the left side of the heart is bypassed so that the right side of the heart does the work of the underdeveloped left side. The first and second stages of the process were accomplished without incident by Dr. William Norwood.
In 2002, Drs. Norwood and John Murphy began a modification of the standard procedure traditionally used to accomplish the third stage of the treatment. Instead of a third open-heart surgery, the doctors decided that the third stage could be accomplished less invasively by using cardiac catheterization. Drs. Norwood and Murphy intended to connect veins and arteries in T.C.’s heart using a Cheatham Platinum covered stent (“CP stent”) via catheteriza *287 tion. The CP stent was not approved by the FDA for general use, but Dr. Murphy obtained FDA approval under the “compassionate use” exception for use of the CP stent in twenty patients. R. at 7.
Soon after Dr. Murphy performed the alternative procedure on December 4, 2003, T.C. began to experience adverse symptoms, was treated briefly at A.I. du-Pont Hospital, and then transferred to Christiana Care Hospital and later Children’s Hospital of Philadelphia (CHOP) at the request of his family. At CHOP, T.C. was under the care of Dr. Jack Rychik, who diagnosed him with pleural effusions and ascites. Effusions are “collections of fluid ... that exist between tissue planes within the body,” which in this case developed around the lungs. R. at 9. Ascites is a condition by which effusions build up within the abdomen. Both conditions were caused by an obstruction, also known as a thrombus, within the CP stent. According to Dr. Rychik, such symptoms are “not a rare or unusual phenomenon” for a patient to develop after undergoing either the CP stent procedure that was used in this case or a third open-heart surgery. R. at 9.
Dr. Thomas Spray, also at CHOP, performed a “fontan takedown,” which reversed the third procedure after Dr. Ry-chik determined this to be the best course of treatment for T.C.’s obstruction. After this operation, T.C. “had a relatively rapid recovery” and has been “doing very well” since. R. at 10.
Due to his development of “severe as-cites and protein losing enteropathy necessitating ... additional surgery,” T.C. sued defendants alleging, inter alia, medical negligence, lack of informed consent, and fraud. Appellant’s Br. at 21. The District Court granted defendants’ summary judgment motion on all counts and subsequently denied T.C.’s motion for reconsideration.
II.
We exercise plenary review over the District Court’s grant of summary judgment. If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, we affirm the District Court’s ruling. Fed. R.Civ.P. 56(c)(2). In our review, we must view the facts in the light most favorable to the nonmoving party, T.C. in this case. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir.2000). The District Court determined that Delaware law governs this action, and neither party disputes this ruling.
At the outset, we dispose of T.C.’s fraud claim. T.C.’s brief raises only the negligence and informed consent claims in its “Statement of Issues” section. Although one heading in T.C.’s brief appears to contest the dismissal of his fraud claim, the brief does not discuss the fraud claim any further. Such casual mention of an issue is insufficient to preserve it for consideration by this court. Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993).
We turn to T.C.’s negligence and informed consent claims. The Delaware Health Care Act, 18 Del. C. § 6801, et seq. governs medical malpractice actions brought under Delaware law. In all but exceptional circumstances not present here, the Act requires the plaintiff in such actions to present expert testimony “as to the alleged deviation from the applicable standard of care in the specific circumstances of the ease and as to the causation of the alleged personal injury....” 18 Del. C. § 6853(e). Expert medical testimony as to the applicable standard of care, the deviation from that standard, and the causal link between the deviation and the alleged injury is “an essential element of a plaintiffs medical malpractice case and, as such, is an element on which he or she *288 bears the burden of proof.” Burkhart v. Davies, 602 A.2d 56, 59 (Del.1991).
The Informed Consent Statute, 18 Del. C. § 6852, is found under the “Medical Negligence” chapter of the Delaware Code. Consequently, the requirement that the plaintiff present expert testimony as to causation in all medical malpractice actions extends to informed consent claims. See Valentine v. Mark, 2004 WL 2419131, *3 (Del.Super.2004) (“[A]n informed consent action still requires expert testimony as to causation.... Section 6852 cannot ... be used as a backdoor around the requirement that causation in medical negligence cases be supported by expert testimony.”). Therefore, the survival of both T.C.’s negligence and informed consent claims requires expert testimony showing that defendants’ negligence was the “but for” cause of T.C.’s alleged injuries. See Culver v. Bennett, 588 A.2d 1094, 1097 (Del. 1991) (rejecting the “substantial factor” test in favor of the “but for” test of proximate causation). However, the Act does not require the use of “magic words” or impose a burden on medical experts to “couch their opinions in legal terms.” Green v. Weiner, 766 A.2d 492, 495 (Del. 2001). The court must evaluate the “proffered testimony as a whole” to determine if it meets the statutory requirements. Barriocanal v. Gibbs, 697 A.2d 1169, 1173 (Del.1997).
T.C. has not presented expert testimony to establish that any acts of negligence by the defendants were the “but for” cause of any harm T.C. suffered. Rather, there is uncontroverted evidence that the symptoms T.C. experienced, pleural effusions and ascites, are common side-effects of the standard open-heart surgery procedure as well as the alternative procedure he underwent. Although T.C. proffers multiple statements by Dr. Weber that he contends satisfy his burden under § 6853(e), the proffered statements in fact clarify that Dr. Weber does not know what caused the obstruction in the CP stent. All of the expert testimony that T.C. cites establishes a causal connection between the obstruction and plaintiffs symptoms. None, however, draws a causal connection between the defendants’ deviation from the applicable standard of care and T.C.’s complained of symptoms. We agree with the District Court that without expert testimony as to this essential link in the causal chain, plaintiff has failed to meet the requirements of § 6853(e).
III.
For the above-stated reasons, the judgment of the District Court will be affirmed.

. Appellant Conaway is referred to both as "Teague” and "Teagh” in various documents. The District Court adopted the former spelling because that is what appeared in the complaint. We do the same.

. The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.