DANIEL R. PEKERA, ADMINISTRATOR (ESTATE OF
CHARLENE WALKER), ET AL. *v.* DAVID
PURPORA ET AL.
(AC 23546)

Lavery, C. J., and McLachlan and Peters, Js.

Argued October 20—officially released December 30, 2003

*John D. Jessep*, for the appellants (plaintiffs).

*Jeffrey R. Babbin*, with whom, on the brief, was *Kevin M. Smith*, for the appellee (defendant Allan Rodrigues).

*Opinion*

PETERS, J. In this case, the prolonged refusal of a hospital patient to consent to a medical procedure called endotrachial intubation[1] resulted in her death. A malpractice complaint alleged that an attending pulmonologist negligently had performed and managed the patient's intubation. The principal issue is whether this complaint should be construed to encompass an allegation that the pulmonologist had failed to inform the patient of the risk of death if she was not immediately intubated. Concluding that such a construction was improper, the trial court granted the pulmonologist's motion for summary judgment. We agree and affirm its judgment.

The plaintiffs, Daniel R. Pekera, the administrator of the estate of the decedent, Charlene Walker, and the decedent's husband, Earl Walker, filed a sixteen count malpractice complaint naming five physicians, two professional corporations and Griffin Hospital as defendants.[2] The complaint alleged that each of them negligently had engaged in conduct that caused the decedent (patient) to suffer injury and to die at Griffin Hospital on April 6, 1996. Except for those counts alleging malpractice by the defendant Allan Rodrigues, a pulmonologist,[3] the plaintiffs have now withdrawn their complaint against the defendants.[4]

---

[1] The term "endotrachial intubation" is defined as "passage of a tube through the nose or mouth into the trachea for maintenance of the airway . . . for maintenance of an imperiled airway." T. Stedman, Medical Dictionary (26th Ed. 1995) p. 887.

[2] The eight counts filed by the administrator named as defendants not only Griffin Hospital, but also physicians David Purpora, David Moll, Allan Rodrigues, Howard Quentzel, and Jeanne Kuslis and two professional corporations, Clinical Center for Neoplastic Diseases, P.C., and Valley Medical Associates, P.C. The eight counts filed by Earl Walker against the same defendants sought recovery for loss of consortium.

[3] We refer in this opinion to Rodrigues as the defendant.

[4] At oral argument in the trial court, the court properly inquired into why the plaintiffs had "sued a great number of doctors, which imposes personal and societal costs, and not pursued these claims." The court record shows

The malpractice allegations against the defendant were set out in five specifications in count nine of the plaintiffs' complaint.[5] During pretrial proceedings, however, the plaintiffs withdrew each allegation except that stated in paragraph 5 (c) of count nine, namely, that the defendant "failed to timely intubate and properly manage the plaintiff's decedent's pulmonary condition . . . ."

The defendant filed a motion for summary judgment on two grounds. He asserted that (1) the plaintiffs' expert witness had not substantiated the plaintiffs' claim of malpractice as stated in paragraph 5 (c) of count nine, and (2) the plaintiffs were not entitled to amend their complaint to conform to the expert's opinion that the defendant improperly had failed to inform the patient of the consequences of her refusal to be intubated.

In their reply, the plaintiffs contested each of the defendant's claims. They argued that paragraph 5 (c) of count nine, as drafted, encompassed a claim of failure to inform because, like the alleged failure to intubate in a timely manner, it arose out of the same factual circumstances. If that argument was unpersuasive, the plaintiffs requested the court's permission "to amend [their] complaint to include specific language relating to that claim so that the relation back analysis can be applied with a specific allegation."

The trial court granted the defendant's motion. It concluded that paragraph 5 (c) of count nine neither expressly nor impliedly charged the defendant with failure to inform the patient of the risks of refusal to con-

that the plaintiffs had filed a certificate of good faith, as required by General Statutes § 52-190a. The court accepted the representation of the plaintiffs' counsel that there was an evidentiary basis for the plaintiffs' decision to sue everyone that had participated in the patient's care.

[5] Count ten was a claim for loss of consortium by Earl Walker. It relied on the same allegations of misconduct that were pleaded in count nine.

sent to intubation. It further concluded that it did not need to address the possibility of an amendment of the complaint because "there is no complaint left to amend."

In their appeal from the judgment in favor of the defendant, the plaintiffs claim that the court (1) construed their complaint too narrowly and (2) should have permitted them to amend their complaint to include an allegation of failure to inform. We disagree.

I

Our review of a trial court's grant of a motion for summary judgment proceeds along a well charted path. We undertake such review to ascertain whether the moving party, on undisputed facts, is entitled to judgment as a matter of law. See, e.g., *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 525, 832 A.2d 1180 (2003).

The undisputed facts establish that, on April 5, 1996, the patient was admitted to Griffin Hospital because she was suffering from severe diabetic ketoacidosis and pneumonia. The defendant, a pulmonologist, was asked to examine the patient in the early hours of the following day. The defendant immediately determined that she needed an endotrachial intubation in order to receive ventilatory support. He also immediately summoned her husband to the hospital to discuss the seriousness of the patient's condition with him.

The patient repeatedly refused to be intubated, despite repeated efforts to persuade her to do so, both by the defendant and her husband. When, at the urgent importuning of her husband, she finally consented to this procedure, she was promptly intubated, but it was too late. She died an hour later.

In paragraph 5 (c) of count nine of the malpractice complaint, the plaintiffs alleged that these facts demon-

strated that the defendant negligently had "failed to timely intubate and properly manage the [patient's] pulmonary condition . . . ." The plaintiffs could not proceed with this claim without the support of expert testimony. See *Davis* v. *Margolis*, 215 Conn. 408, 416, 576 A.2d 489 (1990); *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 613, 816 A.2d 719, cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003).

In his deposition, the plaintiffs' expert witness, Daniel M. Goodenberger, a pulmonologist, did not fault the timeliness of the intubation. He did not question the defendant's decision not to intubate the patient without her consent. It was, however, his view that the patient would have consented to the intubation earlier if the defendant had been more forceful in explaining to her the seriousness of her condition. Goodenberger stated that in his experience, "when patients are told that the alternative to a procedure such as this is death . . . they will accept it." According to the expert, the defendant's care had been substandard because the defendant had not appreciated the seriousness of the patient's condition as soon as he should have and therefore had not advised the patient adequately of the risk of declining intubation.

The plaintiffs argue that the trial court improperly granted the defendant's motion for summary judgment because their expert's testimony provided a sufficient basis for a trial on paragraph 5 (c) of count nine. Like the court, we are not persuaded.

The linchpin of the plaintiffs' argument is that a claim of negligent failure to perform a timely intubation encompasses a claim of negligent failure to provide adequate information to a patient when, as here, the two claims allegedly are causally connected. In their view, the patient's intubation was untimely, as the complaint alleged, as a result of the defendant's failure to

overcome the patient's resistance to intubation in a timely fashion.

The trial court rejected this argument. It held that paragraph 5 (c) alleged negligence in the timing of the patient's intubation and in the management of the pulmonary condition and nothing else. It observed that, in other cases alleging malpractice, plaintiffs have pursued claims of misconduct and claims of failure to inform in separate counts. "Under the facts here," it held, "the plaintiff[s] simply failed to plead the specification that [the defendant] did not adequately inform the [patient] of the risks of refusal."

We agree with the court that, although a malpractice complaint may include claims both for failure to perform and for failure to inform, the two claims are not identical. The closest analogous case is *Williams* v. *Chameides*, 26 Conn. App. 818, 603 A.2d 1211, cert. denied, 221 Conn. 923, 608 A.2d 689 (1992), which also involved malpractice claims arising out of a fatal delay in the performance of a needed hospital procedure, in that case, a heart shunt operation. In *Williams*, we characterized a claim for failure to perform and a claim for failure to inform of the risks of delay as separate and distinct. Id., 821; see also *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 706–707 n.4, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991).

The distinction between a duty to exercise due care in the performance of requisite medical procedures and a duty to exercise due care in informing a patient of medical risks is not merely linguistic. It reflects, instead, the fundamental difference between the appropriate performance of professional skills and the proper engagement of a patient in decision making about his or her professional care. As our Supreme Court held in *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 292–93, 465 A.2d 294 (1983), a physician has the duty

"to provide the patient with that information which a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy."

The duty to inform is, therefore, a crucial aspect of the principle of informed consent. That principle, in turn, arises out of a patient's common-law right of self-determination and constitutional right to privacy. In *McConnell* v. *Beverly Enterprises-Connecticut, Inc.*, 209 Conn. 692, 709–10, 553 A.2d 596 (1989), our Supreme Court honored the firmly expressed wish of a patient that, if she were ever in a vegetative state, her life should not be prolonged artificially. Similarly, in this case, the defendant had a duty to honor the firmly expressed wish of the patient that she not be intubated. He properly declined to intubate her as long as she refused to consent to that procedure.

Respect for a patient's autonomy does not, of course, foreclose a physician's duty to attempt to inform the patient of the risks of forgoing medical intervention. Had the defendant been charged with a breach of that duty, the plaintiffs might well have been entitled to a trial on its merits.

We agree, however, with the trial court's conclusion that the plaintiffs' complaint of medical malpractice did not encompass a claim of failure to inform. The court properly granted the defendant's motion for summary judgment on its merits.

## II

The trial court also addressed and rejected the plaintiffs' suggestion that they should be permitted to amend their complaint to allege that the defendant negligently had failed to inform the patient of the urgency of intubation. In the court's view, because it had rendered summary judgment for the defendant on all remaining

counts, "there [was] no complaint left to amend." "Accordingly," the court held, "[it did] not have to address the question, discussed by the parties, of whether the statute of limitations bars the plaintiff[s] from amending [their] complaint to allege a cause of action for 'informed refusal.' "

On appeal, the plaintiffs contend that the court improperly declined to consider an amendment to the complaint. We agree with the defendant that the plaintiffs' arguments in favor of amendment are not well founded.

First, as a matter of fact, the plaintiffs have not confronted the significance of their failure to *file* a request to amend. The defendant's motion for summary judgment alerted them to the risk that their complaint, as drafted, would be construed to allege only a failure to intubate the patient in a timely manner. Indeed, they discussed the possibility of an amendment in their response to the defendant's motion. We know of no authority for the proposition that discussion of a possible amendment obviates the actual filing of a request to amend.

Second, as a matter of law, even if the court's ruling were to be construed as a refusal of an implied request to amend, the plaintiffs have not addressed the court's discretionary control over amendments to complaints. "Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion." (Internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 211, 821 A.2d 269 (2003). In the absence of a persuasive argument for abuse of discretion, the court's resolution of the amendment issue cannot be faulted.

The judgment is affirmed.

In this opinion the other judges concurred.