DANIEL R. PEKERA, ADMINISTRATOR (ESTATE OF CHARLENE WALKER), ET AL. *v.* DAVID PURPORA ET AL. (SC 17133)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued December 6, 2004—officially released April 12, 2005

*Cynthia C. Bott*, with whom, on the brief, was *John D. Jessep*, for the appellants (plaintiffs).

*Jeffrey R. Babbin*, for the appellee (defendant Allan Rodrigues).

ZARELLA, J. The principal issue in this certified appeal[1] is whether the trial court properly declined to consider the plaintiffs'[2] purported request to amend their medical malpractice complaint against the defendant,[3] Allan Rodrigues, to include an allegation of failure to inform the decedent of the consequences of her refusal to be intubated after the court had granted the defendant's motion for summary judgment and rendered judgment thereon. Although the plaintiffs discussed the possibility of amending the complaint in their reply to the summary judgment motion, they did not file a request for permission to amend before the judgment was rendered. On appeal, the Appellate Court determined, inter alia, that the trial court properly had declined to consider the matter because the plaintiffs had failed to file a request for leave to amend their complaint and had not established that the court abused its discretion. *Pekera* v. *Purpora*, 80 Conn. App. 685, 693, 836 A.2d 1253 (2003). We affirm the judgment of the Appellate Court.

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court.

[1] We granted the plaintiffs' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court did not abuse its discretion in not permitting the plaintiffs to amend their complaint?" *Pekera* v. *Purpora*, 267 Conn. 919, 841 A.2d 1191 (2004).

[2] The plaintiffs in this action are Daniel R. Pekera, administrator of the estate of the decedent, Charlene Walker, and Earl Walker, the decedent's husband.

[3] The plaintiffs initially named as defendants David Purpora, the Clinical Center for Neoplastic Diseases, P.C., David Moll, Valley Medical Associates, P.C., Allan Rodrigues, Howard Quentzel, Jeanne Kuslis and Griffin Hospital. The plaintiffs subsequently withdrew their complaint against Moll, Valley Medical Associates, P.C., Quentzel, Kuslis and Griffin Hospital. Purpora and the Clinical Center for Neoplastic Diseases, P.C., are not parties to this appeal. In the interest of simplicity, we refer to Rodrigues as the defendant throughout this opinion. We refer to all of the defendants collectively as the defendants.

"[O]n April 5, 1996, the patient[4] was admitted to Griffin Hospital [in Derby] because she was suffering from severe diabetic ketoacidosis and pneumonia. The defendant, a pulmonologist, was asked to examine the patient in the early hours of the following day. The defendant immediately determined that she needed an endotrachial intubation in order to receive ventilatory support. He also immediately summoned her husband to the hospital to discuss the seriousness of the patient's condition . . . .

"The patient repeatedly refused to be intubated, despite repeated efforts to persuade her to do so, both by the defendant and [the patient's] husband. When, at the urgent importuning of her husband, she finally consented to this procedure, she was promptly intubated, but it was too late. She died an hour later." Id., 689.

"The plaintiffs . . . filed a sixteen count malpractice complaint[5] naming five physicians, two professional corporations and Griffin Hospital as defendants. The complaint alleged that each of [the defendants] negligently had engaged in conduct that had caused the [patient] . . . to suffer injury and to die at Griffin Hospital on April 6, 1996. . . .

"The malpractice allegations against the defendant were set out in five specifications in count nine of the plaintiffs' complaint.[6] During pretrial proceedings, however, the plaintiffs withdrew each allegation except that stated in paragraph 5 (c) of count nine, namely, that the defendant 'failed to timely intubate and properly

---

[4] Throughout the rendition of the facts, we refer to the decedent as the patient.

[5] Each plaintiff filed one count against each of the eight defendants. Earl Walker, the decedent's husband, sought recovery for loss of consortium.

[6] "Count ten was a claim for loss of consortium by Earl Walker [the decedent's husband]. It relied on the same allegations of misconduct that were pleaded in count nine." Pekera v. Purpora, supra, 80 Conn. App. 688 n.5.

manage the [patient's] pulmonary condition . . . .' "
Id., 687–88.

"The plaintiffs could not proceed with this claim without the support of expert testimony. . . . In his deposition, the plaintiffs' expert witness, Daniel M. Goodenberger, a pulmonologist, did not fault the timeliness of the intubation. He did not question the defendant's decision not to intubate the patient without her consent. It was, however, his view that the patient would have consented to the intubation earlier if the defendant had been more forceful in explaining to her the seriousness of her condition. Goodenberger stated that in his experience, 'when patients are told that the alternative to a procedure such as this is death . . . they will accept it.' According to the expert, the defendant's care had been substandard because the defendant had not appreciated the seriousness of the patient's condition as soon as he should have and therefore had not advised the patient adequately of the risk of declining intubation." (Citations omitted.) Id., 690.

"The defendant filed a motion for summary judgment on two grounds. He asserted that (1) the plaintiffs' expert witness had not substantiated the plaintiffs' claim of malpractice as stated in paragraph 5 (c) of count nine, and (2) the plaintiffs were not entitled to amend their complaint to conform to the expert's opinion that the defendant improperly had failed to inform the patient of the consequences of her refusal to be intubated.

"In their reply, the plaintiffs contested each of the defendant's claims. They argued that paragraph 5 (c) of count nine, as drafted, encompassed a claim of failure to inform because, like the alleged failure to intubate in a timely manner, it arose out of the same factual circumstances. If that argument was unpersuasive, the plaintiffs requested the court's permission 'to amend

[their] complaint to include specific language relating to that claim so that the relation back analysis can be applied with a specific allegation.'

"The trial court granted the defendant's motion [for summary judgment]. It concluded that paragraph 5 (c) of count nine neither expressly nor impliedly charged the defendant with failure to inform the patient of the risks of refusal to consent to intubation. It further concluded that it did not need to address the possibility of an amendment of the complaint because 'there is no complaint left to amend.'

"In their appeal from the [trial court's] judgment . . . the plaintiffs claim[ed] that the court (1) [had] construed their complaint too narrowly and (2) should have permitted them to amend their complaint to include an allegation of failure to inform." Id., 688–89. The Appellate Court rejected both claims and concluded that the trial court properly had granted the defendant's motion for summary judgment on its merits. Id., 692, 693. This certified appeal followed.

The plaintiffs claim on appeal to this court that the Appellate Court (1) failed to recognize that the trial court erred as a matter of law, and (2) improperly concluded that the trial court did not abuse its discretion in declining to consider an amendment to their complaint.[7]

The plaintiffs first claim that the Appellate Court failed to recognize that the trial court erred as a matter of law in declining to consider an amendment to their complaint. They contend that the trial court had juris-

[7] In their brief, the plaintiffs claim that the Appellate Court erred in (1) "finding that the plaintiffs had not properly raised the issue of their proposed amendment," and (2) "holding that the trial court properly exercised its discretion in refusing to rule on the plaintiffs' proposed amendment." For purposes of our analysis, we consider these claims as one because the trial court's decision that it could not consider an amendment following its ruling on the defendant's summary judgment motion was based on the plaintiffs' failure to file a request to amend their complaint earlier in the proceedings.

diction and authority to rule on an amendment and that its decision not to do so elevated form over substance. We disagree.

When a trial court's decision is not based on its exercise of discretion but, rather, on a legal conclusion, our review is plenary, and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record.[8] E.g., *Robinson* v. *Coughlin*, 266 Conn. 1, 5, 830 A.2d 1114 (2003).

The rules that govern the amendment of a complaint are well established. Practice Book § 10-59 provides in relevant part: "The plaintiff may amend any defect, mistake or informality in the writ, complaint or petition and insert new counts in the complaint, which might have been originally inserted therein . . . during the first thirty days after the return day." Practice Book § 10-60 (a) further provides in relevant part: "[A] party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in [Practice Book § 10-59] in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party . . . and with proof of service endorsed thereon. . . ."

---

[8] We note that, although the certified question requires us to determine whether the trial court abused its discretion in not permitting the plaintiffs to amend their complaint; see footnote 1 of this opinion; the relevant facts and circumstances require us to reframe the certified question as follows: Did the Appellate Court correctly conclude that the trial court properly declined to consider the plaintiffs' purported request to amend their complaint after the trial court had granted the defendant's motion for summary judgment?

In the present case, the plaintiffs did not satisfy the applicable rules of practice because they did not file and serve upon the defendant a written request to amend their complaint with the amendment appended thereto. See Practice Book § 10-60 (a). They merely argued in their reply to the defendant's summary judgment motion that a cause of action for the defendant's failure to inform the decedent of the consequences of her refusal to be intubated was encompassed within paragraph 5 (c) of count nine and that, "[s]hould the court find it is not, [the] plaintiff[s] *would request* the court's permission to amend [their] complaint to include specific language relating to that claim so that the relation back analysis can be applied with a specific allegation." (Emphasis added.) This argument can only be construed to mean that, if the court found that a cause of action for failure to inform was not contained within paragraph 5 (c) of count nine, the plaintiffs *then* would request the court's permission to amend the complaint so that such a claim could be considered.

Although the parties discussed the relation back doctrine in connection with the timeliness of a possible amendment to the complaint in their respective memoranda on the defendant's summary judgment motion, neither party maintained, or even implied, that an amendment to the complaint was then before the court. Both parties initially directed their arguments to whether paragraph 5 (c) of count nine alleged a cause of action for the defendant's failure to inform the decedent about the consequences of her refusal to be intubated. They then addressed whether the two year statute of limitations for medical malpractice actions would permit the plaintiffs to amend their complaint *if* the court determined that paragraph 5 (c), as written, did not encompass the claim. In fact, counsel for the defendant expressly stated at the summary judgment hearing that, "[i]n terms of a pleading, a revised pleading, at this

point, would not be timely. *It's not formally before the court. There is no request to file an amended complaint.*" (Emphasis added.) The plaintiffs did not dispute this observation. Accordingly, discussion of the relation back doctrine took place in the context of the *future* filing of an amendment to the complaint and not in the context of an existing filing.[9]

The issue of a "prospective amendment" was discussed by the parties but was not before the trial court because the plaintiffs had not provided the court with the "specific language" necessary for it to consider a claim of failure to inform by properly filing a request to amend. Indeed, the plaintiffs explained in their Appellate Court brief that, "if the plaintiffs [had] amended their complaint to substitute language specifically alleging in a new subparagraph that [the defendant] failed to warn [the decedent] of the risk of refusing intubation, [the] plaintiffs would no longer be able to argue that paragraph [5 (c)] encompassed [the] plaintiffs' expert's opinion . . . ." Accordingly, this is not a case in which the plaintiffs expressed a clear intention to amend their complaint but neglected to follow the proper procedure. Rather, the record reveals that the plaintiffs did *not* wish to amend their complaint when the defendant's summary judgment motion was filed because an amendment might have weakened their position that the existing complaint encompassed a claim of failure to inform. The plaintiffs' reference to a possible future amendment in their reply memorandum thus cannot be considered a request to amend under the applicable

---

[9] The dissent inexplicably devotes considerable attention to the legal principles governing the relation back doctrine and even states an opinion as to how the trial court should have ruled on an amendment to the plaintiffs' complaint. We deem this discussion both irrelevant and inappropriate because the issue has not been raised on appeal.

rules of practice.[10] In the absence of a properly filed request to amend, the trial court was not called upon to exercise its discretion, and it correctly declined, as a matter of law, to consider the purported amendment.

The dissent's real, and only, problem with the trial court's actions is that the court "improperly granted the defendant's motion for summary judgment before considering whether the plaintiffs could amend their complaint . . . ." It is undisputed, however, that the plaintiffs *wanted and therefore actively sought* a decision by the trial court on the defendant's summary judgment motion because the plaintiffs believed that they were entitled to prevail on their challenge to that motion. Thus, without expressly saying so, the dissent argues that, if the trial court intended to grant the defendant's summary judgment motion, the court then *was required* to have so informed the plaintiffs of that intent—in advance of ruling on the motion—so that the plaintiffs could perfect a request to amend their complaint prior to the adverse ruling on the summary judgment motion. In other words, the dissent effectively maintains that the trial court was obligated to give the plaintiffs an advance, or advisory, opinion about the merits of the defendant's summary judgment motion if, and only if, the court concluded that that motion was meritorious. It simply cannot be the case that a trial court has such a responsibility. Because the dissent fails to address that point expressly, however, it also avoids explaining how a trial court legitimately can be required to discharge its duties in that manner.

The trial court's failure to consider an amendment did not work an injustice to the plaintiffs in view of their decision not to amend their complaint following

---

[10] We also note that the plaintiffs' complaint was not amended by order of the judicial authority or by written consent of the adverse party, the only other ways in which it could have been amended under Practice Book § 10-60.

Goodenberger's initial deposition in November, 2001, nearly nine months before the defendant filed his summary judgment motion. At that time, Goodenberger expressed his view that the defendant had failed to inform the decedent that death was a likely consequence of her refusal to be intubated immediately. In fact, an argument can be made that, because the plaintiffs did not assert their failure to inform claim until they replied to the summary judgment motion, more than three years after the plaintiffs filed their complaint, it was the defendant who suffered an injustice by having to respond to new allegations long after the action had been commenced.

The plaintiffs could have filed a motion to open the judgment for the purpose of restoring the case to the docket and amending the complaint after the court had granted the defendant's motion and rendered judgment thereon.[11] See Practice Book § 17-4. They chose not to do so, however. Accordingly, the trial court could not reach the relation back question, to the extent that it was briefed and argued by the parties in the context of a future amendment to the complaint, because the court's decision on the summary judgment motion disposed of the complaint in its entirety and there was no legal basis for ruling upon the purported amendment.

The present case is similar to *Cardi Materials Corp.* v. *Connecticut Landscaping Bruzzi Corp.*, 77 Conn. App. 578, 823 A.2d 1271 (2003), in which the defendant, Connecticut Landscaping Bruzzi Corporation, challenged the standing of the plaintiff, Cardi Materials Corporation, to sue on a contract entered into by an affiliate

---

[11] The dissent interprets our reference to the plaintiffs' failure to file a motion to open the judgment in order to amend the pleadings as an adverse inference. This is not the case. We merely observe that the plaintiffs did not pursue other available options to preserve their rights. Accordingly, it reasonably cannot be inferred that the trial court reached that question and decided it in a manner adverse to the plaintiffs' interests.

of the plaintiff and not by the plaintiff itself. Id., 580, 581. In response to the defendant's oral motion to dismiss at the conclusion of the evidence, counsel for the plaintiff stated: "I could move to substitute [the affiliate] now, which I guess I would formally do to make this accurate." (Internal quotation marks omitted.) Id., 580. Even though the plaintiff did not move to substitute the affiliate, the trial court denied the defendant's motion to dismiss and rendered judgment in favor of the plaintiff. Id. In reversing the trial court's judgment, the Appellate Court observed that the plaintiff had not moved "to substitute [the affiliate] as the plaintiff, nor did the court order that [the affiliate] be substituted for the plaintiff." Id. As a result, the Appellate Court concluded that the plaintiff lacked standing to bring the action because it was not a party to the contract. Id., 581–82.

In the present case, as in *Cardi Materials Corp.*, the plaintiffs considered taking steps to correct a perceived deficiency in their pleadings, namely, amending their complaint to include a claim for failure to inform, but did not follow through and take the contemplated action. Consequently, just as the Appellate Court in *Cardi Materials Corp.* determined that the trial court's judgment should be reversed because the plaintiff in that case had failed to cure a fatal defect in its pleadings; see id., 580, 581–82; the trial court in the present case properly declined to consider an amendment because the plaintiffs had failed to file a request to amend in accordance with the rules of practice.

The plaintiffs argue that a request to amend does not have to be in writing but can be made in the form of an oral motion. See, e.g., *Falby* v. *Zarembski*, 221 Conn. 14, 21, 25, 602 A.2d 1 (1992). They did not make an oral motion to amend their complaint, however, at the hearing on the defendant's summary judgment motion. Although the plaintiffs' counsel argued during that hearing that paragraph 5 (c) of count nine encompassed a

cause of action for failure to inform, he did not request to amend the complaint or express his intention to make such a request at any future time. We therefore conclude that the Appellate Court properly affirmed the trial court's judgment.

The plaintiffs contend that the trial court should have considered the purported amendment because Connecticut courts have followed a liberal policy in favor of allowing amendments, trial courts have wide discretion to entertain amendments before, during and after trial, and this court has regarded amendments offered in conjunction with or in response to motions for summary judgment with leniency. We are not persuaded.

The cases to which the plaintiffs cite are inapposite because they focus on the timing of a properly filed request to amend; see, e.g., *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 128–30, 788 A.2d 83 (2002); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 572–73, 512 A.2d 893 (1986); *Saphir* v. *Neustadt*, 177 Conn. 191, 206, 413 A.2d 843 (1979); *Wright* v. *Coe & Anderson, Inc.*, 156 Conn. 145, 155–56, 239 A.2d 493 (1968); *Smith* v. *New Haven*, 144 Conn. 126, 132, 127 A.2d 829 (1956); *Cook* v. *Lawlor*, 139 Conn. 68, 71–72, 90 A.2d 164 (1952); *McNeil* v. *Riccio*, 45 Conn. App. 466, 474, 696 A.2d 1050 (1997); *Moore* v. *Sergi*, 38 Conn. App. 829, 836–38, 664 A.2d 795 (1995); *Shuster* v. *Buckley*, 5 Conn. App. 473, 479, 500 A.2d 240 (1985); whereas the issue in the present case involves the plaintiffs' complete failure to file such a request. Furthermore, the plaintiffs cite no case in which the court considered whether a party's reference to the possible future filing of a request to amend could be construed as a request under the applicable rules of practice. The cases cited by the plaintiffs thus have no precedential value in the present context because they are factually distinguishable.[12]

---

[12] We note that the dissent cites several of the same cases in support of its claim that our long-standing jurisprudence favors the filing of amendments before, during and after trial. E.g., *Wright* v. *Coe & Anderson, Inc.*, supra,

The plaintiffs further contend that the trial court should have considered the purported amendment because the amendment they proposed merely would have added more specific language to the existing allegations, the parties had time to undertake any further preparations for trial that might have been necessitated by an amendment, the amendment was vital to the plaintiffs' case and the harm suffered by the plaintiffs as a result of the trial court's failure to consider an amendment outweighs any possible prejudice to the defendant. These arguments are without merit. In light of our conclusion that the plaintiffs failed to file a request to amend, this court need not respond to substantive arguments pertaining to a matter not properly before it.

In *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986), we determined that when the trial court is properly called upon to exercise its discretion, its failure to do so is error. In the present case, we conclude that the plaintiffs did not seek a discretionary ruling by the trial court because not only was there no complaint left to amend, but the plaintiffs made no request to amend that required a discretionary ruling. "Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 246, 864 A.2d 666 (2004). Accordingly, we need not address the plaintiffs' remaining claim that the Appellate Court improperly concluded that the trial court did not abuse its discretion in declining to consider an amendment to their complaint.

156 Conn. 155; see *Moore* v. *Sergi*, supra, 38 Conn. App. 835–36. As we have noted, however, the parties in those cases properly filed requests to amend. Consequently, those cases are inapposite.

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT, PALMER and VERTE-FEUILLE, Js., concurred.

KATZ, J., dissenting. Today the majority determines that the failure of the plaintiffs, Daniel R. Pekera, the administrator of the estate of Charlene Walker (decedent), and Earl Walker, the decedent's husband, to "satisfy the applicable rules of practice because they did not file and serve upon the defendant [Allan Rodrigues][1] a written request for leave to amend their complaint with the amendment appended thereto"; see Practice Book § 10-60 (a);[2] meant that "the trial court was not called upon to exercise its discretion . . . and [that] it correctly declined, as a matter of law, to consider the purported amendment." Essentially, the majority exalts form over substance in a way that I think is contrary to our pleading jurisprudence and is undermined by the record in this case. Accordingly, I respectfully dissent.

---

[1] Although the plaintiffs brought their action against eight defendants; see footnote 3 of the majority opinion; references herein to the defendant are to Rodrigues only.

[2] Practice Book § 10-60 (a) provides: "Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party as provided by Sections 10-12 through 10-17, and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party as provided by Sections 10-12 through 10-17 and with proof of service endorsed thereon, be filed with the clerk within the time specified above and placed upon the next short calendar list."

It is important to recognize the context in which the issue was raised at the trial court. In the defendant's motion for summary judgment, he acknowledged the plaintiffs' theory of negligence raised by Daniel M. Goodenberger, the plaintiffs' expert, that the defendant deviated from the standard of care by failing to inform the decedent properly of the consequences of her decision not to allow him to intubate her. The defendant claimed in support of his motion that this theory was not encompassed within the complaint and further asserted that "the plaintiffs were not entitled to amend their complaint to conform to the expert's opinion that the defendant improperly had failed to inform the [decedent] of the consequences of her refusal to be intubated." *Pekera* v. *Purpora,* 80 Conn. App. 685, 688, 836 A.2d 1253 (2003). The parties briefed the issue of whether the relation back doctrine would apply, a principle relevant to whether the trial court could permit an amendment as a matter of law. In his reply brief, the defendant stated that the plaintiffs "now [want] leave to amend." Thereafter, at the hearing on his motion for summary judgment, the defendant argued that, if the case were to go forward on the informed consent theory of negligence, the plaintiffs "would have to amend the pleadings *as [they have] requested.*"[3] (Emphasis added.) Although the defendant went on to point out that there had been no *written* request to file an amendment, he nevertheless engaged in a dialogue with the trial court about why the relation back doctrine did not apply. After this debate on the merits of whether the plaintiffs should be permitted to amend the pleadings to conform with Goodenberger's opinion, the trial

[3] The defendant added that a revised pleading was "not formally before the court [because] [t]here is no request to file an amended complaint." I read that statement, however, in conjunction with the defendant's earlier recognition that, "just as [the plaintiffs' counsel] seemed without making a formal request, he certainly asked for relief to amend his complaint should the court find that appropriate."

court granted the defendant's motion for summary judgment and then concluded that it did not need to address whether the complaint could be amended as a matter of law under the relation back doctrine because, upon granting summary judgment, "there is no complaint left to amend."

Despite the aforementioned discussion on the proposed amendment, the majority concludes that the trial court properly declined to consider whether the plaintiffs were entitled to amend the pleadings in light of their failure to file a written request in accordance with the rules of practice. Additionally, the majority concludes that, because the plaintiffs orally failed to make a motion to amend their complaint at the summary judgment hearing or to state expressly their intention to make such a request, the Appellate Court properly affirmed the judgment of the trial court as a matter of law.[4] The majority reaches this conclusion by emphasiz-

[4] The majority also notes that the plaintiffs failed to move to open the judgment for the purpose of restoring the case to the docket and amending the pleadings to include the untimely informed consent allegation. In my view, it is improper to draw automatically an adverse inference from this inaction. A motion to open is not granted as of right. Practice Book § 17-4; see *Wilkes* v. *Wilkes*, 55 Conn. App. 313, 325-26, 738 A.2d 758 (1999) ("A motion to open and vacate a judgment filed during the four months after which judgment was rendered is addressed to the court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." [Internal quotation marks omitted.]). Thus, this situation is not akin to a party's failure to replead after the court has granted a motion to strike, a remedy available as of right; Practice Book § 10-44; where an adverse inference is warranted that the plaintiff in a particular case has nothing further to substantiate its claims. Additionally, because the relation back doctrine in connection with the proposed amendment was a focal point of the plaintiffs' written and oral argument in the present case, it is hard to imagine what else the plaintiffs might have argued in support of their claim. In this case, any motion to open only would have alerted the trial court that the plaintiffs were serious about wanting to amend their complaint, a desire already expressed during the summary judgment proceedings.

ing the conditional nature of the plaintiffs' assertion that they "would" request the court's permission to amend the complaint. I disagree and would conclude that, based on the record before it, the trial court improperly granted the defendant's motion for summary judgment before considering whether the plaintiffs could amend their complaint and that the Appellate Court improperly affirmed that judgment.

Although the plaintiffs never filed a written request to amend their pleadings in accordance with § 10-60, nor did they *expressly* request permission to amend their complaint as permitted alternatively under § 10-60 (a) (1), it is clear that the trial court and both parties understood that the issue of whether the prospective amendment was permissible as a matter of law under the relation back doctrine was before the court, as was the question of whether there was a need to amend the pleadings. The record reflects that the trial court was well aware of the plaintiffs' primary position that no amendment was necessary and of their secondary and consequential interest in including more specific allegations to conform explicitly to Goodenberger's deposition testimony if the trial court were to conclude that the allegations in paragraph 5 (c) of count nine of the complaint did not include allegations regarding the defendant's deficient warnings. Under these circumstances, I disagree with the majority's reliance on the plaintiffs' failure formally to seek permission to amend as a basis for its decision affirming the granting of the motion for summary judgment.

This court repeatedly has eschewed applying the law in such a hypertechnical manner so as to elevate form over substance. See, e.g., *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 422, 797 A.2d 494 (2002) ("[t]o conclude . . . that the fact that the plaintiff invoked [a statute] instead of bringing a common-law action in equity deprived the trial court of jurisdiction would be

to exalt form over substance"); *Zamstein* v. *Marvasti*, 240 Conn. 549, 557, 692 A.2d 781 (1997) (rejecting defendant's claim that plaintiff had not appealed from final judgment because plaintiff had not withdrawn remaining counts of his complaint until *after* filing appeal because "[u]nder these particular circumstances . . . it would unduly elevate form over substance to hold that no appealable final judgment existed"); *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 391, 685 A.2d 1108 (1996) (This court concluded that if the trial judge were "required to grant a motion to restore the case to the docket before considering the motion for contempt, we can only regard his actions as the functional equivalent of the granting of such a motion. To conclude otherwise would be to elevate form over substance."), overruled in part on other grounds, *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999). Although I do not condone the plaintiffs' failure to file a request to amend, to agree with the Appellate Court's affirmance of the summary judgment rendered in this case would be to exalt form over substance. See *Tedesco* v. *Stamford*, 215 Conn. 450, 462–63, 576 A.2d 1273 (1990) (concluding that Appellate Court should not have set aside judgment without considering whether defendant city had been misled or prejudiced by plaintiff's failure to allege constitutional violation resulting from municipal policy or custom when record revealed that defendant had sufficient notice that plaintiff was asserting claim on this basis, and that any variance between pleadings and proof was immaterial and was waived by defendant's failure to object at trial), remanded, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd on other grounds, 222 Conn. 233, 610 A.2d 574 (1992).

Our long-standing jurisprudence favoring amendments and scrutinizing judicial discretion informs the lens through which this issue should be considered. It is well settled that, "[u]nder the statutes and rules of

practice, the court may in its discretion, in a proper case, allow the filing of amendments to pleadings before, during and after trial. [*Wright* v. *Coe & Anderson, Inc.*, 156 Conn. 145, 155, 239 A.2d 493 (1968)]; see *Moore* v. *Sergi*, 38 Conn. App. 829, 835–37, 664 A.2d 795 (1995)." (Internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 174, 783 A.2d 1226 (2001). "Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 364, 659 A.2d 172 (1995). "Whether to grant a request to amend the pleadings is a matter within the discretion of the trial court, and this court will rarely overturn the decision of the trial court. . . . Judicial discretion . . . [however] is always legal discretion, exercised according to the recognized principles of equity. . . . While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 521, 686 A.2d 481 (1996).

Despite the discretion afforded the trial court, in the interest of justice, "our courts have generally been most liberal in allowing amendments. . . . Where a sound reason to amend is shown, the trial court must allow the amendment. Refusal under such circumstances constitutes an abuse of discretion. . . . The essential tests are whether the ruling of the court will work an injustice to either [party] and whether the granting of the motion will unduly delay a trial. . . . In the final analysis, the court will allow an amendment unless it will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the

issues, or if there has been negligence or laches attaching to the offering party." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Sergi*, supra, 38 Conn. App. 835–36.

I recognize that the issue before this court is not whether the trial court abused its discretion in not allowing the plaintiffs to amend their complaint. To be sure, the trial court never exercised its discretion in that regard because it granted the defendant's motion for summary judgment. The same considerations underlying our jurisprudence favoring amendments and scrutinizing judicial discretion, however, should bear on whether the Appellate Court properly affirmed the summary judgment rendered on the basis of the trial court's refusal to exercise its discretion at all. Indeed, applying those considerations to this case, I am struck by the injustice that is realized as a result of today's decision. It is apparent that the plaintiffs did not state expressly that they would seek permission to file an amendment were one necessary because they either were intent on convincing the trial court that that the allegations in paragraph 5 (c) of count nine of the complaint already encompassed the defendant's deficient warnings or were convinced that any allegations regarding the consequences of the decedent's refusal to allow the intubation would be a mere amplification or expansion of what had been alleged. It is equally apparent, however, beginning with the plaintiffs' opposition to the defendant's motion for summary judgment, that the plaintiffs alerted the court to their position regarding the amendment and that the plaintiffs, the defendant and the trial court all understood that the issue of the proposed amendment was under consideration.[5] Indeed, the

---

[5] The plaintiffs also claimed in the trial court that the defendant had waived his right to claim any "surprise" by Goodenberger's testimony because the defendant had failed to move that the plaintiffs' complaint be made more specific. They further claimed that, should the trial court determine that the allegations in paragraph 5 (c) of count nine of the complaint did not include allegations regarding the consequences of the decedent's refusal to

defendant argued extensively in his memoranda in support of his motion for summary judgment why the plaintiffs should not be given the opportunity to amend their complaint.

Under the circumstances of this case, the trial court should not have rendered summary judgment without affording some consideration to the proposed amendment. For the Appellate Court to conclude that the trial court "also addressed and rejected the plaintiffs' suggestion that they should be permitted to amend their complaint to allege that the defendant negligently had failed to inform the [decedent] of the urgency of intubation"; *Pekera* v. *Purpora*, supra, 80 Conn. App. 692; is a far too generous characterization of what transpired. As the Appellate Court noted, the trial court *refused* to consider an amendment to the complaint because it already had granted the motion for summary judgment. Like the majority here, the Appellate Court relies on the plaintiffs' failure formally to file a written request to amend as determinative for purposes of the trial court's ruling. I recognize that, "[p]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them." (Internal quotation marks omitted.) *Heim* v. *California Federal Bank*, 78 Conn. App. 351, 363, 828 A.2d 129, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). To apply the law in such a hypertechnical manner as has been done in this case, however, is to elevate form over substance. Indeed, there was no legal impediment to the trial court considering whether the additional allegation at issue would create a material issue of fact along with the complaint

allow the intubation, and even if the trial court were to determine that an amendment would not be a mere amplification of the original pleadings, the defendant had fair notice of that claim.

as it stood before granting the motion for summary judgment.[6] Certainly, there would have been no unfair surprise to the defendant in light of his having raised the issue in the first instance.

Additionally, the Appellate Court's determination that, "even if the court's ruling were to be construed as a refusal of an implied request to amend, the plaintiffs have not addressed the court's discretionary control over amendments to complaints"; *Pekera* v. *Purpora,* supra, 80 Conn. App. 693; both imposed an improper burden on the plaintiffs and trivialized the plaintiffs' claim before that court. The issue of whether the trial court properly could deny a request to amend the complaint in the exercise of its discretion was not before the Appellate Court, as the trial court never crossed beyond the legal threshold of deciding that it could no longer exercise its discretion having rendered summary judgment.[7] The plaintiffs have yet to be given the oppor-

---

[6] For this reason, I disagree with the majority that the Appellate Court's decision in *Cardi Materials Corp.* v. *Connecticut Landscaping Bruzzi Corp.,* 77 Conn. App. 578, 823 A.2d 1271 (2003), supports its conclusion. In that case, the issue was one of standing, thus implicating the court's jurisdiction to entertain the action. Id., 581–82. No such jurisdictional bar precluded the trial court from considering whether to permit the plaintiffs to amend the complaint before rendering summary judgment.

[7] In light of the plenary review exercised by the Appellate Court in addressing such an issue of law, a more appropriate burden to impose on the plaintiffs might have been to demonstrate whether, even if the trial court improperly had refused to consider the amendment, the trial court nonetheless would have been required to find as a matter of law that the amendment did not relate back to the original complaint. With regard to that issue, however, I agree with the plaintiffs that the relation back doctrine applies in this case as a matter of law.

"The relation back doctrine has been well established by this court. A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely

tunity to offer proof to be tested against our standards

new and different factual situation is presented, a new and different cause of action is stated. . . . Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . . ." (Internal quotation marks omitted.) *Alswanger* v. *Smego*, 257 Conn. 58, 64–65, 776 A.2d 444 (2001).

Three cases best illustrate this court's approach to the relation back doctrine. In *Gurliacci* v. *Mayer*, 218 Conn. 531, 546, 590 A.2d 914 (1991), this court applied the doctrine because the plaintiff's original complaint alleged that the defendant had acted negligently in operating his automobile while he was intoxicated, and the plaintiff later amended her complaint to add allegations that the defendant had acted either wilfully, wantonly and maliciously, or outside the scope of his employment. Prior to *Gurliacci*, in *Sharp* v. *Mitchell*, 209 Conn. 59, 73, 546 A.2d 846 (1988), this court rejected application of the doctrine because "[t]hese complaints involve two different sets of circumstances and depend on different facts to prove or disprove the allegations of a different basis of liability. . . . The defendants did not have fair notice of the claim of negligent construction and design of the underground storage area when the original complaint merely alleged that [the defendant] was negligent in ordering the employees to enter the area." In *Gurliacci*, we distinguished *Sharp*, explaining that the amendment to the complaint in *Sharp* was more than an amplification because "the defendant would have been required to gather different facts, evidence and witnesses to defend the amended claim." *Gurliacci* v. *Mayer*, supra, 549. In *Gurliacci*, however, the amendment "did not inject two different sets of circumstances and depend on different facts . . . ." (Citation omitted; internal quotation marks omitted.) Id.

In *Alswanger* v. *Smego*, supra, 257 Conn. 67, we concluded that the trial court properly disallowed the relation back of the amended complaint. "Although the focus of the original complaint was on the informed consent as it related to the surgical procedure itself, the amended complaint shifted the focus to consent by the patient to the participation of the individuals involved in the surgery. For example, the amended complaint would have required evidence as to [the] actual and specific role [of a surgical resident] in the surgery, his experience, whether the plaintiffs were informed of the role he would play and his experience, whether the [defendant physician and hospital] were required to provide that information to the plaintiffs, and the hospital's policy, as a teaching hospital, regarding a resident's involvement in surgery. Any discussion as to much of this evidence, however, would have been irrelevant under the original complaint, which asked whether the defendants adequately informed the plaintiffs regarding the surgical procedure. As in *Sharp*, the amendment in the present case would have forced the defendants to gather different facts, evidence and witnesses to defend the amended claim." (Internal quotation marks omitted.) Id., 66–67.

regarding an abuse of discretion, the essential elements of which are whether the ruling of the court will work an injustice to either party and whether the granting of the motion to amend will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the issues. One factor is clear from the record, however, the injustice to the plaintiffs. Thus, the trial court would need to consider that factor against whether the defendant's rights would have been prejudiced based upon surprise and whether the defense would have been hampered had the court allowed the plaintiffs to amend their complaint. The bare assertion of prejudice in the defendant's brief to this court is not sufficient to support a claim of prejudice as a matter of law. See *Southington '84 Associates* v. *Silver Dollar Stores, Inc.*, 237 Conn. 758, 768, 678 A.2d 968 (1996). Therefore, I would conclude that the Appellate Court improperly determined that the trial court properly refused to exercise its discretion to consider whether the plaintiffs could amend their complaint.

Accordingly, I dissent.

In the present case, the allegation that the defendant failed adequately to inform the decedent of the consequences of her decision not to intubate constitutes an act of negligence based on essentially the same set of facts as those alleged in the original complaint. Although the focus of the original complaint was on the failure timely to intubate and properly manage the decedent's pulmonary condition, Goodenberger's testimony addressed the type of information the decedent needed in order properly to make the decision whether to allow the intubation. Part of the defendant's failure to intubate timely related to his inability to get the decedent's consent, which Goodenberger attributed to poor advice by the defendant. Therefore, I would determine that an amendment addressed to the defendant's failure to inform the decedent of the consequences of her refusal to allow the intubation would not be time barred and therefore not futile. Finally, I note that, because the issue of the timing of intubation was in the case from its onset, the conversations surrounding the decedent's decision not to intubate necessarily would have been a part of the investigation. Whether the defendant would be prejudiced by the need to take additional discovery on this issue when he waited nine months after Goodenberger's testimony before moving for summary judgment would be a matter for the trial court to consider on remand.