# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 39758

| | | |
|---|---|---|
| LON N. PECKHAM, D.M.D., a licensed dentist in the State of Idaho | ) )  ) | Coeur d'Alene, April 2013 Term |
| Plaintiff-Appellant, | ) ) | 2013 Opinion No. 77 |
| v. | ) ) | Dated:  June 21, 2013 |
| IDAHO STATE BOARD OF DENTISTRY, and KEVIN T. STOCK, as acting Board Chairman for the IDAHO STATE BOARD OF DENTISTRY, | ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County.  Hon. Jeff Brudie, District Judge.

The decision of the district court is <u>reversed</u>.  Costs are awarded to Appellant.

Featherston Law Firm, Chtd, Sandpoint, attorneys for Appellant.  Brent C. Featherston argued.

Michael Kane & Associates, PLLC, Boise, attorneys for Respondents.  Michael J. Kane argued.

_____

W. Jones, Justice

## I.  NATURE OF THE CASE

The Board of Dentistry (the "Board") fined a dentist for failing to adequately inform one of his patients before performing a procedure, and for publishing misleading advertising on his website.  The district court affirmed the Board's decision, and the dentist appealed to this Court. We reverse because there was insufficient evidence to support the Board's conclusions.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Since 1986, Lon N. Peckham, D.M.D, has been licensed by the Board as a general dentist.  At all relevant times he operated a solo practice called AIRO Dental in Post Falls, Idaho.

This case is based on two separate chains of events. The first involves his treatment of Judy Malby, a patient who patronized his office between June of 2003 and February of 2007. The second involves an ongoing dispute with the Board regarding claims that Dr. Peckham made in a newspaper advertisement and on his website, although the charges here are based on only a single webpage.

Before the events that gave rise to this case, Dr. Peckham developed a phased treatment plan under which he was to place crowns on four of Malby's teeth. The allegations here involve only a left rear molar ("Tooth 18"). Malby is satisfied with the crowns on the other three teeth; those crowns were made from gold or porcelain fused to gold. Tooth 18 had been crowned some twenty years earlier, but Malby needed a new crown due to further decay.

In December of 2006, Dr. Peckham placed a silver amalgam buildup on Tooth 18 in preparation for the later installation of a porcelain-fused-to-gold crown. However, after Dr. Peckham built up Tooth 18, Malby asked if he could provide a less expensive crown. Dr. Peckham responded that he could place a "silver crown"[1] on the tooth.

Malby does not "remember the real conversation" with Dr. Peckham regarding the "silver crown." She is "sure there was some conversation" but cannot "remember anything that was talked about." She remembers only that the following pieces of information were *not* revealed: (1) that the crown would be "silver amalgam" as opposed to pure "silver"; (2) that silver amalgam is the same substance used for fillings; and (3) that the "silver crown" would be shaped directly in her mouth in a single visit, as opposed to manufactured in a lab and installed during a follow-up visit.

Before the "silver crown" was placed, Malby knew that it would be "less visually appealing than a porcelain crown." Nonetheless, she chose the "silver crown" for two reasons: (1) as a rear molar, the aesthetics of Tooth 18 were less important to her; and (2) she wanted to save money. Malby admitted that "[she] alone made the choice between a porcelain crown and a silver crown" and that "Peckham did not suggest or recommend one over the other." Dr. Peckham concedes that he may not have used the word "amalgam." According to Dr. Peckham, he uses the term "silver crown" because it is more understandable to patients. His unrebutted

---

[1] To acknowledge that the parties dispute whether the object that Dr. Peckham placed on Tooth 18 can properly be classified as a crown, the phrase "silver crown" is placed in scare quotes.

testimony was that he advised Malby that the "silver crown" would not last as long as a full gold or porcelain-fused-to-gold crown.

Dr. Peckham placed the "silver crown" on Tooth 18 in February of 2007. In July of 2008, the "silver crown" detached from Tooth 18. Malby first visited a dentist named Dr. Simon Prosser in the hopes that he could glue the "silver crown" back to Tooth 18. Dr. Prosser examined the "silver crown," determined that he could not re-attach it, and recommended an implant. In August, Malby sought a second opinion from Dr. Steven Bates, a general dentist licensed in Washington State who has practiced in Deer Park, Washington for thirty-five years. Bates also suggested an implant, but Malby opted for a buildup and new crown instead. In September of 2008, Malby filed an official complaint with the Board.

There is conflicting evidence about why the "silver crown" detached. Dr. Peckham's theory is that the underlying tooth structure further decayed because Malby failed to practice good dental hygiene and make follow-up appointments. He finds support in the fact that Dr. Prosser observed "recurrent decay" on what remained of Tooth 18. However, Dr. Bates stated there was no decay and that the remaining tooth structure was "pretty clean." The hearing officer made no findings on this question, which in any event is irrelevant to the issue of whether Malby received sufficient information about the "silver crown" procedure.

At some point in late 2007 or early 2008, Dr. Peckham published an advertisement in the Coeur d'Alene Press titled "**Shocking Research From World Authority <u>Finds a Link Between Dementia and Missing Teeth</u>**."[2] The advertisement stated that a recent study showed that "<u>people with no teeth or very few teeth had a higher rate of dementia</u>." After receiving a complaint regarding the advertisement, the Board sent a letter to Dr. Peckham demanding that he immediately cease "[t]his type of advertising." The Board's letter claimed that the advertisement "may be false, or misleading or deceptive to the public and is not readily susceptible to verification" (an apparent reference to I.D.A.P.A. 19.01.01.046.02) and that the advertisement was "intended to take advantage of the fears and emotions of a particularly susceptible type of patient" (an apparent reference to the former I.D.A.P.A. 19.01.01.046.02(f)).[3]

---

[2] Dr. Peckham's materials are heavily bolded, underlined, italicized, and capitalized. All emphasis in quotations from these documents is original rather than supplied.

[3] Subsection (f) has since been repealed, and the other subsections were re-lettered to reflect the deletion.

Only a single webpage from the AIRO Dental website is alleged as a basis of the charges at issue here. That page, which is titled "THE TRUTH ABOUT DENTURES" (the "Dentures Page"), begins with the following disclaimer:

> **Can you handle the truth?**
> **The State Dental Board doesn't think you can!!!**
>
> **WARNING:** If you are easily scared and prone to make rash decisions without understanding the risks as well as the benefits, don't read any farther [*sic*]. This report is only suitable for rational adults.

The Dentures Page goes on to state that "our political dental organizations don't think you can handle the truth, and are actively trying to hide it from you!" It explains that Dr. Peckham published a "public service ad in our local newspaper," but "two weeks later [he] received a 'cease and desist reprimand' from the state dental board accusing [him] of taking unfair advantage of 'vulnerable individuals.' " Although he had placed the warning as a precautionary measure to ensure compliance with the former I.D.A.P.A. 19.01.01.046.02(f), Dr. Peckham "firmly believe[d] that the public has a right to know, and that we as professionals have a duty to inform about any health dangers we may know or learn of." The Dentures Page then makes a number of factual assertions, including that "[m]issing teeth are associated with dementia" and that "[l]ong term denture use leads to . . . [i]ncreasing risk of diabetes . . . [and] [i]ncreasing risk of heart disease." There are no citations on the Dentures Page. However, the Dentures Page acknowledges that "to be perfectly honest, we don't know exactly why all these facts are true."

Although it was not mentioned in the Board's Amended Administrative Complaint, both parties extensively discuss the so-called "Denture Truth Report." The Denture Truth Report apparently can be viewed on the AIRO Dental website, and also was available to interested individuals upon request in hard-copy form. It is similar to the Dentures Page, but includes an addendum listing many articles from peer-reviewed scientific journals on which Dr. Peckham supposedly relied when making his factual claims about dentures. Only one of those articles, Pamela Sparks Stein et al., *Tooth Loss, Dementia and Neuropathology in the Nun Study*, 138 J. Am. Dental Ass'n 1314 (2007) (hereinafter the "Stein Article"), is included as part of the record. The Stein Article reports a longitudinal study of the dental and cognitive health of a group of Roman Catholic nuns. It found that there is a correlation between a low number of teeth and the onset of dementia late in life, but cautioned that causation should not be inferred.

4

In April of 2009, the Board filed its Administrative Complaint against Dr. Peckham based on his alleged failure to (1) "advise [Malby] in understandable terms of the treatment to be rendered, i.e., providing a large amalgam build up rather than a silver crown," and to (2) "inform [Malby] of the proposed treatment and any reasonable alternatives, and . . . to involve [her] in treatment decisions . . . [by] providing a large amalgam build up when [she] expected to receive a silver crown." In December the Board filed its Amended Administrative Complaint. In addition to the allegations listed above regarding the Malby Matter, the Board further alleged that Dr. Peckham made misleading representations on his website related to (1) the correlation between denture use and various ailments, and (2) his suggestion that the Board was trying to hide the "truth" about that correlation. These allegations were based on the Dentures Page only, not on the newspaper advertisement or the Denture Truth Report. The Board requested the revocation of Dr. Peckham's license and a fine of up to $40,000.

A hearing was held in July of 2010. During the hearing, the Board offered two definitions of a "crown." According to Dr. Blaisdell, a licensed general dentist who has practiced for thirty years in Caldwell, Idaho, a crown is: "[a] substitute or a replacement for the top of the tooth when it becomes damaged or too weak to be able to support the occlusive forces [i.e.] the biting forces of the mouth." Dr. Blaisdell further testified that "the conventional way" in which a crown is placed is an indirect method; in other words, a crown normally is manufactured outside the mouth and then cemented onto the remainder of the tooth that requires treatment. The second definition came from a textbook titled "Contemporary Fixed Prosthodontics" on which Dr. Blaisdell relied when formulating his own definition. According to the textbook, a crown is:

> [A]n artificial replacement that restores missing tooth structure by surrounding part or all of the remaining structure with a material such as cast metal, porcelain, or a combination of materials such as metal or porcelain.

Notably, the textbook definition does not list direct placement as a determinative characteristic.

Dr. Blaisdell further testified that "amalgam" is a combination of metals. In dentistry a "silver amalgam"—i.e. an amalgam that includes silver—is frequently used to fill cavities and to build up tooth surfaces as preparation for the placement of crowns made from other materials. The advantage of a silver amalgam is that it can be placed on a tooth in a "mushy form" and then shaped as it hardens.

5

Ultimately, Dr. Blaisdell opined that the "silver crown" was a silver amalgam buildup rather than a crown, on the sole grounds that it was placed directly, rather than indirectly. Similarly, Dr. Bates opined that the "silver crown" was a "piece of amalgam" and not a crown.

Dr. Blaisdell admitted on cross-examination that the type of material used does not determine whether a restoration is a crown. He also conceded that in the 1970s a dentist reported using the same procedure that Dr. Peckham used on Tooth 18 and that this dentist called the restoration an "amalgam crown." Finally, Dr. Blaisdell testified that "[c]olloquially people would call it a silver crown." Similarly, Dr. Bates admitted on cross-examination that the item that dislodged from Tooth 18 could be called "an amalgam crown," although he considered it an inferior and temporary alternative to a "permanent crown."

At no time during the hearing did the Board put on any evidence regarding the amount of information that a dentist in good standing would have provided regarding the "silver crown" procedure. Indeed, the only testimony related to that subject came from Dr. Peckham's expert, Dr. Darrel Mooney. Dr. Mooney is licensed to practice fixed prosthodontics,[4] and has been doing so in Boise since 1987. He testified that no further consent is needed before placing a silver amalgam "crown" if a patient has already properly consented to a gold crown, and then requests a cheaper alternative.

In September of 2010, the hearing officer issued his Findings of Fact, Conclusions of Law, and Recommended Order ("Recommended Order"). In the Malby Matter, the hearing officer found that "[t]here is some basis for an 'amalgam' crown dating back more than 30 years," but also found that "[t]he procedure performed on Ms. Malby [on] February 16, 2007, was best described as an amalgam build up; a crown was not placed in her mouth." The hearing officer further opined, without citing any expert testimony or other evidence in the record, that "[i]t can reasonably be concluded that unless a patient is specifically informed that amalgam will be used to create a direct placement crown, the patient did not give informed consent."

The hearing officer concluded that Dr. Peckham had violated I.C. § 54-924, which allows the Board to revoke or suspend a dentist's license or impose fines of up to $10,000 per violation. Specifically, the hearing officer found that Dr. Peckham had violated the subsections stating that a dentist shall not:

---

[4] Prosthodontics is "the dental specialty concerned with the making of artificial replacements of missing parts of the mouth and jaws." Webster's Third New International Dictionary 1822 (1971). According to Dr. Mooney, fixed prosthodontics "involves crowns, bridges, and implants."

6

(7) Commit malpractice, that is, to provide dental care which fails to meet the standard of dental care provided by other qualified dentists in the same community or similar communities, taking into account his training, experience and the degree of expertise to which he holds himself out to the public; or

(8) Engage in unprofessional, unethical or immoral conduct, as defined by board rules; or

. . . .

(12) Violate any other provisions of law or rules adopted by the board . . . .

The hearing officer concluded that, in the Malby Matter, Dr. Peckham violated a single rule: I.D.A.P.A. 19.01.01.040.021, which forbids the "[f]ailure to advise patients . . . in understandable terms of the treatment to be rendered [or] alternatives . . . ."

In the Advertising Matter, the hearing officer concluded that "Dr. Peckham's website and supporting information concerning 'The Truth About Dentures' [are collectively] an advertisement as defined by I.D.A.P.A. Rule 19.01.01.046.01(8) [*sic*—should be (a)]." He further concluded that Dr. Peckham had violated I.C. § 54-924(4) and (9), which provide in pertinent part that no dentist shall:

(4) (a) Make . . . any fraudulent, false, or misleading statement as to his own . . . method of practice; or

. . . .

(e) Advertise the use of, or use, any system, method, technique [or] device . . . which is . . . falsely advertised . . . or,

. . . .

(9) Advertise in such way as to . . . probably deceive or defraud, the public or patrons . . . .

Dr. Peckham supposedly violated a single rule in the Advertising Matter: I.D.A.P.A. 19.01.01.046.02, which prohibits licensed dentists from advertising "in any form or manner which is false, misleading or deceptive to the public or which is not readily susceptible to verification." The rule further provides, in pertinent part, that:

False, misleading or deceptive advertising or advertising that is not readily susceptible to verification includes, but is not limited to, advertising that:
a. Makes a material misrepresentation of fact or omits a material fact; [or]
b. Makes a representation likely to create an unjustified expectation about the results of a dental procedure . . . .

The hearing officer held that Dr. Peckham misleadingly (1) failed to distinguish between causation and correlation; (2) conflated missing teeth with long-term denture use; (3) indicated

7

"that he can cure or limit heart disease and diabetes by dental treatment"; and (4) suggested that the Board was attempting to hide the truth.

In March of 2011, the Board issued its Final Order. The Board recited that it had considered all of the evidence presented to it and that it had also scrutinized the Recommended Order. Furthermore, the Board adopted the Recommended Order "in its entirety including all findings of fact and conclusions of law" and "incorporated" the Recommended Order "by reference." The Board then imposed a penalty of $10,000 ($5,000 for each of the two infractions) and ordered Dr. Peckham to pay $23,000 in prosecution costs as provided by I.C. § 54-924.

Later in March, Dr. Peckham filed his Petition for Judicial Review in the First Judicial District Court for Bonner County. In January of 2012, the district court issued its Memorandum Opinion and Order on Petition for Judicial Review, in which it upheld the Board's Final Order in all respects. Regarding the Malby Matter, the court commented that "there was sufficient evidence for the hearing officer to find Dr. Peckham failed to advise Ms. Malby in understandable terms that the tooth restoration he provided on her back molar was an amalgam material overlay or crown, rather than a silver metal crown." In the Advertising Matter, the court held, with little explanation, that the Board's decision was supported by the record. Dr. Peckham timely appealed to this Court.

### III. ISSUES ON APPEAL

A.   Is the Board's Final Order procedurally deficient merely because it incorporates by reference the hearing officer's Recommended Order?
B.   Should the district court's order upholding the Board's decision in the Malby Matter be reversed?
C.   Should the district court's order upholding the Board's decision in the Advertising Matter be reversed?
D.   Is Dr. Peckham entitled to attorney fees on appeal pursuant to I.C. § 12-117?

### IV. STANDARD OF REVIEW

When reviewing a district court's decision in a petition for judicial review under the Idaho Administrative Procedure Act, we examine the agency record independently, but ultimately decide whether the district court correctly ruled on the issues presented to it. *See Two Jinn, Inc. v. Idaho Dep't of Ins.*, 154 Idaho 1, 3, 293 P.3d 150, 152 (2013). An agency's final order must be affirmed unless the appellant shows that his substantial rights have been

8

prejudiced, I.C. § 67-5279(4); *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 232, 254 P.3d 1224, 1228 (2011), and also that the final order is:

(a) in violation of constitutional or statutory provisions;
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(d) not supported by substantial evidence on the record as a whole; or
(e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3); *Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 260, 207 P.3d 988, 991 (2009).

We will not disturb an agency's factual findings if they are supported by substantial evidence in the record, even if the evidence is conflicting. *A & B Irrigation Dist. v. Idaho Dep't of Water Res.*, 153 Idaho 500, 505–06, 284 P.3d 225, 230–31 (2012); *Vickers v. Lowe*, 150 Idaho 439, 446, 247 P.3d 666, 673 (2011). It is the Board's burden to prove its case by clear and convincing evidence, rather than the accused's burden to prove his innocence. *See Laurino v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 137 Idaho 596, 601, 51 P.3d 410, 415 (2002) (citing *Cooper v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 134 Idaho 449, 456 n.3, 4 P.3d 561, 568 n.3 (2000)). And, while the Board may use its expertise to reach factual findings based on evidence in the record, that expertise cannot serve as a substitute for necessary evidence. *See Paul v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 134 Idaho 838, 842, 11 P.3d 34, 38 (2000).

## V. ANALYSIS

### A. The Board's Final Order is not procedurally deficient merely because it incorporates by reference the hearing officer's Recommended Order.

Dr. Peckham argues that the Board's Final Order was deficient because it incorporates by reference the hearing officer's Recommended Order without setting forth new findings of fact or reasoning. The Board responds that Dr. Peckham was properly served with a copy of the Recommended Order. Therefore, he was not prejudiced in any way by the fact that the Board's Final Order did not restate the hearing officer's findings and reasoning.

Under the Idaho Administrative Procedure Act, an agency's final order must include: "A reasoned statement in support of the decision. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts of record supporting the findings." I.C. § 67-5248(1)(a). In an analogous case, a Florida appellate court held that it is not reversible error for an agency to incorporate by reference a hearing officer's

findings of fact and conclusions of law, rather than stating them anew in the final agency order. *See City of Orlando v. Int'l Ass'n of Fire Fighters, Local 1365*, 384 So. 2d 941, 946 (Fla. Dist. Ct. App. 1980). We agree and find no error with the Board's procedure.

**B.     The district court's order upholding the Board's decision in the Malby Matter must be reversed because there is insufficient evidence that Dr. Peckham failed to adequately inform Malby about the "silver crown" procedure.**

Dr. Peckham argues that the Board never established a standard of care. Rather, the hearing officer independently created his own standard. Dr. Peckham further argues that the Board's failure to establish a standard of care deprived him of due process of law.[5] The Board contends that it was unnecessary to establish a standard of care because this is an administrative disciplinary proceeding. The Board insists that "there was ample testimony that Ms. Malby received an amalgam buildup and not a crown," and that "amalgam crowns are not used in the current practice of dentistry."[6]

We begin our analysis with two indisputable propositions. First, it would be impossible for a healthcare provider to fully apprise his or her patients of every aspect of each procedure. The human body is amazingly complex, and to fully comprehend even the most mundane treatment one must have an advanced understanding of anatomy and physiology. Without some limit on the amount of information that a healthcare provider is obligated to discuss, our healthcare infrastructure would grind to a halt.

However, it is equally clear that in the absence of an emergency a healthcare provider must offer pertinent information to his or her patients. The failure to do so would be a grave affront to their rights to self-determination and bodily autonomy. *See Pekera v. Purpora*, 836 A.2d 1253, 1256 (Conn. App. Ct. 2003), *aff'd*, 869 A.2d 1210 (2005); *McQuitty v. Spangler*, 976 A.2d 1020, 1031 (Md. 2009); *Canesi ex rel. Canesi v. Wilson*, 730 A.2d 805, 812 (N.J. 1999); Roger L. Jansson, Note, *Researcher Liability for Negligence in Human Subject Research: Informed Consent and Researcher Malpractice Actions*, 78 Wash. L. Rev. 229, 244 (2003).

---

[5] Because we conclude that there was insufficient evidence for the Board to find that Dr. Peckham did not adequately advise Malby about the "silver crown," we need not reach Dr. Peckham's constitutional arguments. *See State v. Lee*, 153 Idaho 559, 563, 286 P.3d 537, 541 (2012).

[6] There is no allegation in the Complaint that Dr. Peckham committed misconduct merely by placing a "silver crown" in Malby's mouth. As such, it would violate due process if he were disciplined for doing so. *See Pearl v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 137 Idaho 107, 115, 44 P.3d 1162, 1170 (2002); *Cooper v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 134 Idaho 449, 454–55, 4 P.3d 561, 566–67 (2000); *Krueger v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 122 Idaho 577, 582–83, 836 P.2d 523, 528–29 (1992). Moreover, the hearing officer never found that the "silver crown" was unsafe or defective.

Our Legislature has struck a balance between these competing concerns in I.C. § 39-4506, which provides in pertinent part:

> Any . . . consent [for the furnishing of health care, treatment or procedures] shall be deemed valid and [reasonably] informed if the health care provider to whom it is given or by whom it is secured has made such disclosures and given such advice respecting pertinent facts and considerations as would ordinarily be made and given under the same or similar circumstances, by a like health care provider of good standing practicing in the same community.

This statute is part of the Medical Consent and Natural Death Act.[7] The purposes of the Act are:

> (a) To provide and codify Idaho law concerning consent for the furnishing of hospital, medical, dental, surgical and other health care, treatment or procedures, and concerning what constitutes an informed consent for such health care, treatment or procedures; and
> (b) To provide certainty and clarity in the law of medical consent in the furtherance of high standards of health care and its ready availability in proper cases.

I.C. § 39-4501(1). Nothing in the Act suggests that it is inapplicable in administrative disciplinary proceedings. As such, Dr. Peckham can be punished for inadequately advising Malby about certain particulars of the "silver crown" restoration only if the Board establishes that, under similar circumstances, a dentist in good standing would have provided that information.

Malby has very little recollection of her discussion with Dr. Peckham regarding the "silver crown." In fact, she identified only three pieces of information that Dr. Peckham did not reveal: (1) that the crown would be silver amalgam as opposed to pure silver; (2) that silver amalgam is the same substance used for fillings; and (3) that the "silver crown" would be shaped directly in her mouth in a single visit, as opposed to manufactured in a lab and installed during a follow-up visit. There is not one shred of evidence that a dentist in good standing under the circumstances that Dr. Peckham encountered would have provided any of these three pieces of information. Moreover, the parties debate at length whether a direct-placement restoration can technically qualify as a "crown." We will assume *arguendo* that it cannot. Even with the benefit of this assumption, there is simply no evidence that a dentist in good standing under the circumstances that Dr. Peckham encountered would have apprised his patient of the obscure semantic distinction between a "crown" and an "amalgam buildup" or "amalgam crown."

---

[7] I.C. §§ 39-4501 to -4515.

11

Because there was insufficient evidence to support the Board's conclusion in the Malby Matter, the district court's order upholding it must be reversed.

**C.      The district court's order upholding the Board's decision in the Advertising Matter must be reversed because there is insufficient evidence that any of the statements in the Dentures Page were misleading.**

We hold that the Board did not adduce sufficient evidence to support a finding that any of Dr. Peckham's statements on the Dentures Page were misleading.[8]  As noted earlier, the hearing officer's Recommended Order, which was adopted by the Board and upheld by the district court, identified four ways in which the Dentures Page was supposedly misleading: it (1) failed to distinguish between causation and correlation; (2) conflated missing teeth with long-term denture use; (3) indicated "that [Dr. Peckham] can cure or limit heart disease and diabetes by dental treatment"; and (4) suggested that the Board was attempting to hide the truth.  We address each contention in turn.

First, the Dentures Page merely states that "missing teeth are associated with dementia." It does not state that missing teeth cause dementia.  The Dentures Page also asserts that "[l]ong term denture use leads to . . . [i]ncreasing risk of diabetes [and] . . . [i]ncreasing risk of heart disease."  During the hearing, the Board cross-examined Dr. Peckham about whether the articles that he relied on supported these claims; Dr. Peckham insisted that they did.  The Board never presented any expert testimony to the contrary.  Nor did it make any of Dr. Peckham's sources— with the exception of the Stein Article, which dealt only with dementia—part of the record. Therefore, there is no basis for concluding that Dr. Peckham's unrebutted testimony was inaccurate.

Second, the articles that Dr. Peckham relies on apparently discuss connections between missing teeth and various ailments, as opposed to denture use and various ailments.  Dr. Peckham assumes that there is a high overlap between the set of people who lack teeth and the set of people who use dentures, and infers that characteristics of the first set will be shared by the second set.  Perhaps there are many toothless people without dentures.  If this is so, then Dr. Peckham's inferential leap is unwarranted.  In the absence of any evidence on this question, however, we cannot conclude that this aspect of the Dentures Page is misleading.

---

[8] Although both parties briefed and argued the question of whether the Dentures Page is protected speech under the First Amendment of the United States Constitution, we decline to reach that issue because this case can be resolved on other grounds. *See State v. Lee*, 153 Idaho 559, 286 P.3d 537, 541 (2012).

12

Third, the Dentures Page simply does not claim that Dr. Peckham can cure or limit heart disease and diabetes by dental treatment. It suggests that dental treatment can eliminate one contributing cause of these ailments. There is no evidence that this claim is unfounded.

Finally, the validity of Dr. Peckham's claim that the Board is hiding the truth is entirely dependent on whether Dr. Peckham is disseminating the "truth." The Board has not proven that the contents of the newspaper advertisement are untrue (although one could well characterize Dr. Peckham's writing style as sensationalistic and tawdry). Therefore, there is insufficient evidence that Dr. Peckham's criticism of the Board in the Dentures Page is misleading.

Because there is insufficient proof to establish that the Dentures Page is misleading, the Board's decision in the Advertising Matter cannot stand.

**D.     Dr. Peckham is not entitled to attorney fees.**

Dr. Peckham requests attorney fees on appeal pursuant to I.C. § 12-117. Although we ultimately find the Board's arguments unpersuasive, we do not believe that it "acted without a reasonable basis in fact or law." I.C. § 12-117(1). Therefore, we decline Dr. Peckham's request.

## VI. CONCLUSION

We reverse the district court's decision upholding the Board's Final Order as to both the Malby and the advertising matters because there was insufficient evidence to support the Board's conclusions. We tax costs, but not attorney fees, in Dr. Peckham's favor.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.